| | |
|---|---|
| 5 | 377 |
| 6 | 140 |
| 6 | 339 |
| 7 | 228 |
| 9 | 303 |
| 9 | 522 |
| 14 | 569 |
| 18 | 404 |
| 20 | 497 |
| 21 | 391 |
| 24 | 842 |
| 5 | 377 |
| 26 | 390 |
| 5 | 377 |
| 31 | 254 |
| 5 | 377 |
| 46 | 610 |
| 5 | 377 |
| 51 | 310 |
| 54 | 55 |
| 55 | 394 |
| 5 | 377 |
| 58 | 772 |
| f58 | 776 |
| 5 | 377 |
| f61 | 242 |

WILLIAM M. PREUIT, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Practice in Criminal Cases**: GRAND JURY. Where the record shows that the court ordered vacancies in the panel of grand jurors to be filled by certain persons named by the judge: *Held*, error, and that a motion to quash the indictment for that reason should have been sustained.

2. ———: ———. The duty of making the selection of persons to fill vacancies in the panel is confided to the sheriff alone, but when so selected, the court may pass upon their qualifications to serve.

3. ———: CHANGE OF VENUE. On a change of venue in a criminal case, the original indictment must be transmitted to the clerk of the court to which the venue is changed.

4. ———: INDORSEMENT OF PLEA UPON INDICTMENT. The statute directing the entry of the prisoner's plea on the back of the indictment is not mandatory, but directory merely, and the failure to so enter it is no ground for a reversal of the judgment, when the plea is contained in another part of the record.

5. ———: SHORT-HAND REPORTER. The refusal of the court to appoint a short-hand reporter to take down the testimony, is not error. This is a matter resting entirely in the discretion of the court.

6. ———: VERDICT. A verdict in these words: "We, the jury, selected, impaneled and sworn in the above entitled cause, do find the defendant, William M. Preuit, guilty of murder in the first degree," is sufficient, without adding "in manner and form," etc.

7. ———: ———. Where the highest degree of homicide is charged and the verdict is guilty, nothing more is required than to specify the degree which the jury find.

8. ———: JUDGMENT. In recording the judgment, the clerk should follow, substantially, the formal language of the court in pronouncing it.

9. ———: CHARGE OF THE COURT: INTERESTED WITNESSES. Where informers, detectives, or other persons employed to hunt up testimony against the accused, are called to testify against him, he is

entitled to an instruction to the jury that in weighing their testimony greater care should be exercised than in the case of witnesses who are wholly disinterested.

10. **Evidence:** PRESUMPTION. Where the fact of killing is shown, and no explanatory circumstance is proven, malice is presumed, and the crime of murder in the second degree is established.

THIS was an indictment for murder found in the district court of Jefferson county. The cause was removed for trial to Thayer county, and resulted in the conviction of the prisoner. He then sued out this writ of error.

*John Saxon* (with whom was *L. W. Colby*), for plaintiff in error, cited *Doyle v. The State*, 17 Ohio, 222. *Portis v. The State*, 23 Miss., 578. *Stevens v. The State*, 3 Ohio State, 453. *Burley v. The State*, 1 Neb., 396. 1 Bishop Crim. Prac., Sec. 921. Nebraska Criminal Code, Secs. 453, 456, 457, 458. *Shoemaker v. The State*, 12 Ohio, 43. Laws Neb., 1875, 63. Cooley Con. Lim., Sec. 329. *Lowenberg v. The People*, 27 N. Y., 336. *Elliott v. The People*, 13 Mich., 365. *Field v. The State*, 47 Ala., 603.

*George H. Roberts, Attorney General,* for the state.

No brief on file.

LAKE, CH. J.

A very large number of errors are assigned, but we will notice those only that are essential to a fair consideration of the case.

I. It is assigned for error "that the grand jury was not lawfully chosen, impaneled and sworn."

The record discloses the fact that two of the persons originally drawn as grand jurors were excused from serving, and that "thereupon the court ordered the sheriff to fill the panel by summoning the following persons as

talesmen: D. W. Edgerton and Wilson Armstrong." And it further appears that the said Armstrong was afterward also excused, and " thereupon the court ordered the sheriff to fill the panel by summoning John G. Hollenbeck as talesman."

After the transfer of the case to Thayer county for trial, a motion was made to quash the indictment for the reason, among others, that the grand jury by which it was found was " not summoned, selected, sworn and charged as required by law." This motion was overruled, and exception duly taken.

In the case of *Burley v. The People*, 1 Neb., 385, where the record showed that the court ordered certain vacancies in the panel of grand jurors to be filled from the list of petit jurors, it was held to be erroneous, and the judgment, for this, among other errors, was reversed.

We think the course pursued in this case, as shown by the record, is clearly within the evil pointed out in the case just cited. It appears that the *court* directed the sheriff to call into the jury box certain persons, naming them.

The statute provides for the filling of all vacancies that may exist at any time in the panel of jurors. This statutory direction is clear and explicit. The court may order the sheriff to fill it, not by calling particular individuals designated by the judge, but by summoning, " without delay, good and lawful persons, having the qualifications of jurors." The duty of making the selection of persons to serve as talesmen is confided to the sheriff alone, but when selected by him the court may pass upon their qualifications, and, for good reasons, excuse them from serving.

We think the record shows that the court usurped the province of and exercised a duty conferred expressly upon the sheriff, and that for this reason the motion to quash the indictment should have been sustained.

II.   The next point urged upon our attention is, that the original indictment was not sent to Thayer county, to which the venue was changed, and where the trial was had.   If this objection were sustained by the record, it would be good grounds for reversal.

On a change of venue being ordered, the statute requires a transcript of all the proceedings in the case, together with " the *original indictment*," to be transmitted to the clerk of the court to which the venue is changed.   Crim. Code, Sec. 456.

By reference to the record, however, we find that the original indictment was in fact sent to, and filed in, Thayer county.   This objection, therefore, falls to the ground.

III.   It is next objected that the defendant's plea of not guilty was not entered by the clerk on the back of the indictment, as required by section 453 of the crimes act.   This provision we regard as directory merely, and the failure to so enter the prisoner's plea to be no ground for the reversal of a judgment.   The fact that the defendant was duly arraigned, and plead not guilty to the indictment, is clearly shown by the record, and this is enough.   No possible injury could be done to the accused by the failure to enter his plea on the back of the indictment.

IV.   But it is urged that the record shows no ground for ordering a change of venue from Jefferson county, and that, therefore, the court sitting in Thayer county was not authorized to proceed with the trial against the remonstrance of the defendant.

The statute, Sec. 455 of the Criminal Code, provides that: " All criminal cases shall be tried in the county where the offense was committed, unless it shall appear to the court by affidavits that a fair and impartial trial cannot be had therein; in which case the court may

direct the person accused to be tried in an adjoining county."

From this it is clear that the venue could not have been rightfully changed from Jefferson county, without a showing by affidavits that a fair and impartial trial could not have been had therein. And the records transmitted to Thayer county ought to have shown that fact.

But, notwithstanding the record is silent on this point, we are well satisfied that the proper showing was made. It is true the prisoner made oath, "That he did not make or file, or authorize, or request the making or filing of affidavits, tending to show that a fair and impartial trial could not be had in Jefferson county." Yet we are quite satisfied that the change was in truth made at his request, and on a proper showing.

In addition to the presumption that the court did its duty in this respect, we have the sworn statement of the defendant himself, in support of an application for a continuance, made on the 18th of June, 1875, that he had in fact made such an affidavit. We are of opinion, therefore, that this objection is not supported by the facts

V.   It is claimed that the court erred in refusing to appoint a short-hand reporter, to take down the testimony produced upon the trial. The refusal to grant this request, made by defendant's counsel, was based upon the fact that one could not then be obtained. Even if no such excuse had existed, this refusal of the court to appoint a reporter would not have been error. This whole matter is left entirely to the discretion of the judge presiding at the trial.

Objection is also made to the form of the oath administered to the petit jury. We find, however, that it conforms substantially to that which the statute prescribes. There is no error in this particular.

VI.   An objection is made to the form of the verdict

in this, that it does not find the prisoner guilty, "*in manner and form as charged in the indictment.*" The verdict is in these words: "We the jury selected, impaneled, and sworn in the above entitled cause, do find the defendant, William M. Preuit, guilty of murder in the first degree." This is a good verdict, and directly responsive to the question which was submitted to the jury. The addition of the words, "in manner and form," etc., could add nothing to its effect, or make it any more certain, or capable of supporting a judgment. On a trial for murder, under an indictment like the one under consideration, where the highest degree of homicide is charged, and the verdict is guilty, nothing more is required except to specify the degree. In this case the jury found the crime to be murder in the first degree, and so expressly declared in the verdict which they returned.

VII. In regard to the judgment, to which objection is made, the record simply shows that one was rendered, by the court in conformity to the verdict, but it does not appear to have been recorded in the formal language used by the court in pronouncing the sentence. The record merely recites that: "Thereupon the court sentenced the defendant, William M. Preuit, to be hanged by the neck until dead. The sentence to be carried into effect on the 23d day of June, 1876, between the hours of 12 o'clock M., and 6 o'clock P. M."

Now this language of itself is no proper judgment. It is, strictly speaking, but a recital of the fact that one was rendered by the court upon the verdict, the substance of which is given by the clerk. The judgment of the court, substantially in the formal language of the judge, should have been set out at length. Great care should be observed by the clerk in this particular. Even if no other error appeared in the records, it is hardly probable that the judgment, so called, could be affirmed.

VIII.   It is urged, also, that there was error in several of the instructions given to the jury, and also in the refusal of the court to give several requested on behalf of the defendant.

As to those given, we see nothing of which the prisoner could reasonably complain.   The objection that the court, in the seventh paragraph, "assumed that the deceased was murdered," is entirely unfounded.   This language when taken in connection with what immediately preceded it was certainly very favorable to the accused.   The court had just given the statutory definition of the different degrees of homicide, including of course those of murder, and then added: "In this case you have heard the testimony of many witnesses, not one of whom claims to have witnessed the murder of Albert O. Whittaker."   This is followed by a few suggestions as to the value of circumstantial evidence, and a statement that the prosecution depended entirely upon this sort of testimony for a conviction.   We see nothing wrong in all this, and deem it eminently favorable to the defendant.

Of the instructions requested by the prisoner's counsel, the first two were given.   The third, however, which was in the words following was refused, viz: "That in weighing the testimony greater care should be used by the jury in relation to the testimony of persons who are interested in, or employed to find, evidence against the accused than in other cases, because of the natural and unavoidable tendency and bias of the mind of such persons to construe everything as evidence against the accused, and disregard everything which does not tend to support their preconceived opinions of the matter in which they are engaged."

Where witnesses of the description here suggested are called and testify in the case we think the accused is entitled to have the jury instructed substantially as here requested, if he ask it.   We think the observation

of every judge, who is much accustomed to preside in criminal trials, will bear us out in saying that the testimony of informers, detectives, and other persons employed in hunting up testimony in a criminal case, should be criticised more carefully than that given by witnesses who are wholly disinterested. The court had not covered the ground of this instruction, and we think erred in refusing to give it.

The fourth instruction requested was substantially included in the general charge of the court, and, therefore, there was no error in refusing to repeat it in another form.

As to the fifth instruction requested we think it was properly refused. It does not state the rule of presumption correctly, where the mere fact of killing is shown, with no attendant circumstance whatever. It contained this among other propositions, " that if the jury should find from the evidence that the defendant did kill and slay Albert O. Whittaker, the presumption of the law is that it was manslaughter, until the prosecution has proved malice on the part of the defendant."

Now, the rule has generally obtained in this state, that, where the fact of killing is established, and there is no explanatory circumstance proven, malice is presumed, and the crime is murder. In Ohio, from whence our present criminal code was chiefly derived, this presumption is carried no further than to establish the crime of murder in the *second* degree. *State v. Turner*, Wright's Rep., 20. And this is the rule in Virginia under a similar statute. *Hill's Case*, 2 Grat., 595. Indeed, under our former criminal code, which recognized but one degree of murder, malice was implied from the mere fact of killing; when no considerable provocation was shown. And this is the rule, substantially, of the common law. 1 East. C. L., 340.

As to remaining objections, all that need be said is,

that they point to no substantial error, nothing which, in view of the instructions that the court actually gave, would warrant a reversal of the judgment. Aside from the errors which we have already pointed out, the trial seems to have been very fairly conducted.

We are of opinion, therefore, that the judgment of the district court should be reversed and the indictment quashed, but in view of the enormity of the crime charged against the prisoner, it is ordered that he be committed to the custody of the sheriff of Jefferson county, there to remain and abide the further action of the district court sitting therein.

JUDGMENT ACCORDINGLY.