## STATE v. GEORGE WHITT.*

*Murder—Challenge to Array—Amendment of Sheriff's Return on Writ and List of Special Venire—Accessory—Principal— Evidence—Res Gestæ—Dying Declarations—Natural Evidence.*

1. The integrity and fairness of the entire panel of jurors summoned in obedience to a writ of *special venire*, are not affected by the fact that one man named in the writ had removed from the county, and that another named therein was dead when the jury list was revised by the County Commissioners; nor by the fact that one of those named on the venire was not summoned, nor by the fact that the Sheriff in copying the list of the venire furnished him, omitted, by mistake, the name of one, who in consequence was not summoned.

2. Where a Sheriff, in making his return on a writ and list of special venire, endorsed thereon: "Received October 25, 1893, executed October 30, 1893, by summoning one hundred and fifty men," it was within the discretion of the Court, at the term to which the writ was returnable, to permit an amendment of the return so as to show those of the list furnished him by the Clerk, who were actually summoned, and those not summoned, with the reasons why they were not.

3. A principal in the second degree is not an "accessory," but a "co-principal."

4. On the trial of a prisoner charged with murder, not as an accessory before or after the fact, but as a co-principal, it was not error in the Court to charge the jury, that in determining the fact whether the prisoner was an aider and abetter in the murder, and therefore guilty in the second degree, they should not be influenced by the fact that another, charged with the murder, had been previously acquitted.

5. Although a conversation, which took place between a witness and deceased immediately after the latter was fatally wounded, in which he described the number and location of his wounds and the character of his sufferings and stated his belief that he was killed (it being in evidence that deceased died within forty-eight

*SHEPHERD, C. J., not being present, did not participate in the decision of this case.

STATE *v.* WHITT.

hours after the wounds were inflicted), was not a part of the *res gestæ*, yet it, as well as the statement of what the deceased said about the transaction, would have been competent as dying declarations.

6. In such case, testimony as to the statement of the deceased concerning his wounds and suffering (the character of the former being proved otherwise, and it not being seriously controverted that they caused the death) could not prejudice a prisoner on trial for the killing. Besides, such statements not containing any reference to the transaction in which the wounds were received, were competent as natural evidence.

Indictment for murder, tried in BUNCOMBE Criminal Court, before *Jones, J.* The facts appear in the opinion. The prisoner appealed from the judgment pronounced.

*The Attorney General,* for the State.
*Mr. Chas. A. Webb,* for the prisoner (appellant).

CLARK, J.: The prisoner was indicted for murder and was convicted of murder in the second degree. There was a special venire of one hundred and fifty men ordered and drawn from the box by the Court. *The Code,* § 1739; *State v. Brogden,* 111 N. C., 656. The prisoner challenged the array—

1. Because one of the men named on the special venire had removed from the county, and another was dead at the time the jury list had been revised by the County Commissioners.

2. Because the Sheriff had endorsed on the writ and list of special venire: "Received 25th October, 1893; executed 30th October, 1893, by summoning a jury of one hundred and fifty men." The Solicitor moved that the Sheriff be allowed to amend his return, so as to show those of the list furnished him by the Clerk who were actually summoned, and those of said list not summoned, with the reasons why they were not. The Sheriff was permitted to amend his return, as moved, and the prisoner again excepted.

3 Because one of those named on the venire was not summoned.

4. Because the Sheriff in copying the list of the venire by mistake failed to copy the name of one man, who, in consequence, was not summoned. The jury was selected before the prisoner had exhausted his peremptory challenges.

The first ground of exception was expressly held adversely to the prisoner in *State* v. *Hensley,* 94 N. C., 1021. The amendment of Sheriff's return was in the discretion of the Court at this term, and removed the second ground of objection, if it had any merit. The other two grounds assigned likewise did not "affect the integrity and fairness of the entire panel," and were properly disallowed. *State* v. *Hensley, supra.*

The prisoner excepted because the Court refused to charge the jury that there was not sufficient evidence to go to them to show a conspiracy between the prisoner and John Llewellen to murder the deceased. A consideration of the evidence sent up justifies such refusal.

The prisoner also excepted to the charge of the Court—

"1. In that the Court charged that, 'if the jury should find from the evidence that there was no conspiracy between the prisoner and John Llewellen, it would then be their duty to consider whether he was an aider and abetter in the killing of Charles Brockers, that is, as principal in the second degree, and in determining that fact they should not be influenced by the fact that John Llewellen had been acquitted of the murder of Brockers, that the acquittal of John Llewellen should have nothing to do with their verdict in this case.' Brockers was a Deputy Marshal, who had arrested John Llewellen on a warrant, and had been killed in attempting to carry him to jail. John Llewellen and his father had been tried and acquitted. The prisoner was charged, not as an accessory before or after the fact, but as a co-principal. What another jury had done as to Llewellen was inadmissible for

or against one charged as a principal. The case of *State v. Jones*, 101 N. C., 719, therefore, has no application. A principal in the second degree is not an accessory, but a co-principal. 1 Bishop Cr. Law, § 604 (4). Even if the prisoner had been charged as principal in the second degree, he could have been convicted when the principal in the first degree had been acquitted. 1 Wharton Cr. Law, § 222, note 2, and numerous cases there cited; 9 Am. & Eng. Enc., 574, note 2.

2. The prisoner further excepted because the Court charged the jury "that, in order to find the prisoner guilty as a principal in the second degree, the jury must be satisfied from the evidence, beyond a reasonable doubt, that he actually aided and abetted John Llewellen in the killing of Brockers; that if they were satisfied beyond a reasonable doubt from all the evidence that the deceased was murdered by John. Llewellen, and that just before the fight began the prisoner stood at the northeast corner of the house with a pistol in his hand, and that John Llewellen came to the door with a pistol in his hand, and the prisoner then said to him, ' You can go to Marshall, if you want to go, and if you don't, you need not; by G—d, I am here,' and that this was said for the purpose of encouraging John Llewellen to resist a lawful arrest by the deceased, and that during the fight that ensued the prisoner had a pistol in his hand prepared and ready to assist John Llewellen if it should become necessary, and that he stood near the witness Samuel Cox, cocking his pistol backwards and forwards twice, either for the purpose of preventing the said Cox from assisting Brockers in the arrest, or for the purpose of showing John Llewellen that he was prepared to assist him, or encouraging him in resisting arrest, and that by reason of such action and words and behavior the said John Llewellen was encouraged and assured by the prisoner, that then, this would be an aiding and abetting by the prisoner, and he would be guilty, as a principal, in the second degree, whether he fired the fatal shot or not, and could be convicted

of murder in the second degree." Wallis' case, 1 Salk., 334, is an authority exactly in point. He was tried at Old Bailey in 1703. The indictment was against A for murder, and aginst Wallis and others as persons present, aiding and abetting A therein. A was first tried and acquitted. When Wallis was afterwards put on trial and convicted, HOLT, C. J., determined that, though the indictment be against the prisoner for aiding and assisting and abetting A, who was acquitted, yet the indictment and trial of that prisoner (Wallis) was well enough, for all are principals, and it is not material who actually did the murder." *Brown* v. *State*, 28 Ga., 199; 9 Am. & Eng. Enc., 570. Indeed, as is said by Dr. Wharton, 1 Criminal Law, 9th Ed., 221, " The distinction between principals in the first and second degrees, is a distinction without a difference." To same effect is 1 Bishop Criminal Law, 8th Ed., § 604, and other authorities.

The Solicitor asked the witness Cox, " What did Brockers say to you immediately after the fight about his having a wound"? The prisoner objected on the ground that, not being a part of the *res gestæ* and not having been made in the presence of the prisoner, it was incompetent. The Court ruled, after preliminary inquiry, that what Brockers then said to the witness about his feelings or the nature of the wound he had received, was competent, but anything that he said about the fight was incompetent. The witness then testified, that " not over ten minutes after the fight, and about one hundred or one hundred and fifty yards from the place of the fight, as soon as he and Brockers had gotten on their horses, Brockers asked him if he was not shot. Witness, told him No, and asked Brockers if he was. He said Yes, he thought he was killed. Witness then asked him where he was shot, and he said, through the leg, the arm and the thigh and the body, and that he believed he could feel the blood running inside of him." The prisoner excepted. It was also in evidence that Brockers died within forty-eight hours from the wounds received on that occasion.

The Court correctly held that the conversation was not a part of the *res gestæ.* COCKBURN, C. J., in *Rex* v. *Bedingfield,* 14 C. C., 341; Roscoe's Cr. Ev., 26, 29, and cases there cited; *State* v. *Frazer,* 1 Hous., 176; *James* v. *State,* 71 Ind.; 66. Upon the evidence it would seem that the Court might well have held these dying declarations and have admitted what it excluded, to-wit, Brocker's statement of the transaction. *State* v. *Mills,* 91 N. C., 581, on p. 594. The declarations of the deceased were only admitted by the Court as statements of his condition, that he thought he was killed and believed he could feel the blood running inside, and locating the wounds he had received. The latter was sufficiently proved by uncontradicted evidence, and as it is not seriously controverted they caused the death, we do not see how the recital of them by the deceased, nor his statement of the intensity of his suffering therefrom, as that he thought he was killed, and could feel the blood running inside, could have possibly prejudiced the prisoner. Besides, such statements not containing any reference to the transaction in which the wounds were received, are competent as natural evidence. 21 Am. & Eng. Enc., 103; *Insurance Co.* v. *Moseley,* 8 Wall., 397; 1 Greenleaf Ev., § 102.                                    No Error.