CLARENCE ARTHUR JETER *v.* STATE
OF MARYLAND

[No. 423, September Term, 1969.]

*Decided June 24, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Seymour R. Goldstein* and *Louis J. Glick* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert C. Ozer, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Clarence Arthur Jeter, the appellant, was convicted in the Criminal Court of Baltimore of first degree murder and storehouse breaking. Judge Solomon Liss presided without a jury. On appeal, Jeter questions the first degree murder verdict and its accompanying life sentence. He maintains that he may not be convicted of first degree murder either under the felony-murder rule nor otherwise as a participant in the crime of storehouse breaking. He did not appeal his conviction for storehouse breaking.

On January 25, 1968, at approximately 3:15 a.m., Robert Thompson, the deceased, night watchman for L. Greif and Brothers warehouse in Baltimore City, discovered someone had broken into the upper floor of the warehouse. Thompson, after calling the police, went to the office section of the warehouse and notified William Wilkerson, James Paul and Otis Warren, all employees of the company, who then went with Thompson to the warehouse to locate the intruder.

The three surviving employees testified at trial. All of them saw a head bobbing in and out of an open or broken window as if someone were trying to get inside the building; however, only James Paul identified the man in the

window as the appellant. The employees also saw another man with a gun behind a rack of clothes in the warehouse. The night watchman, Thompson, approached the gunman with an order to drop his weapon. Thompson, going in back of the clothes rack and thus out of view of the other employees, scuffled with the gunman. By watching the feet of the watchman and the gunman, the employees determined that after the scuffle the gunman walked five or ten feet away from Thompson, turned and fired his gun at the night watchman. Thompson then came back into the view of the employees, clutching his chest and moaning. He died as a result of the wound. The gunman then fired a second shot at the other employees. The time lapse between when these witnesses were notified by Thompson of the intruder's presence and the shooting was estimated to be between five and ten minutes.

Officer William Wossowski, in response to a call of a breaking in progress, drove to the back of the L. Greif and Brothers warehouse, arriving approximately two minutes after receiving the call. At the warehouse, Wossowski saw appellant standing by a broken window and immediately placed him under arrest. There were men's clothes on the ground near appellant. After the arrest Wossowski was joined by Officer Lester Boring. Boring and Wossowski observed another man inside the warehouse attempting to leave, and followed his movements through a wall of windows. Boring fired one shot at this man, but did not prevent his escape. The man was later found on the rafters of the building by police dogs.

After appropriate constitutional warnings, appellant gave a statement to the police in which he admitted his participation in the storehouse breaking, and admitted that he knew that the gunman was armed with a pistol before entering the warehouse.

Both at trial and on appeal, appellant mounts a two pronged attack to his first degree murder conviction. First, he contends that the felony-murder statute in Maryland by its wording does not apply to a storehouse breaking. Second, he contends that he was not otherwise

responsible for the homicide because (1) it was not a natural and probable consequence of his agreement to participate in the storehouse breaking and (2) he was under arrest and in police custody at the moment of the homicide. The State disputes appellant's reliance on the time lapse between when the police were called, when they responded, and when the homicide occurred by indicating that the shot heard after appellant's arrest was the one fired by Officer Boring, and not the shot fired by the gunman. The trial court, in a memorandum read into the record, stated that even assuming that appellant was in custody when the fatal shot was fired, had not been in the building, and did not himself fire the shot, the appellant was equally as guilty as the gunman. The trial court determined the degree of murder to be first degree since the delay between the scuffle and the shot established the deliberation, premeditation, and wilfulness beyond a reasonable doubt. We cannot say he was clearly erroneous in so finding. Maryland Rule 1086. In its memorandum, the trial court assumed that the felony-murder rule did not apply.

Firstly, this Court also assumes the present case is outside the felony-murder rule; however, this does not end our inquiry. The felony-murder rule in Maryland is recorded in Md. Code, Art. 27, §§ 408, 409 and 410, wherein it is indicated that any murder in the perpetration of, or attempt to perpetrate, certain enumerated crimes will be murder in the first degree; storehouse breaking is not among the enumerated crimes. It is obvious a murder during a storehouse breaking may be a first degree murder if the required wilfulness, deliberation and premeditation of Art. 27, § 407 are proven, as they were here. Thus, merely because storehouse breaking is not one of the enumerated crimes in the felony-murder statute does not preclude the possibility of a first degree murder during the perpetration of a storehouse breaking if the required elements of first degree murder are proven. The effect of the felony-murder statute is to remove the necessity of proving premeditation, wilfulness and deliberation in a murder prosecution if the murder occurs during one of the enumerated crimes.

There is no doubt that appellant was a principal in the second degree in the storehouse breaking. See *Butina v. State,* 4 Md. App. 312, 242 A. 2d 819, *Thomas v. State,* 2 Md. App. 502, 235 A. 2d 777, and *Radcliffe v. State,* 6 Md. App. 285, 251 A. 2d 11.

Appellant does not seriously contend that a criminal participating in a felony is not responsible for the natural and probable consequences of his criminal activity; rather he contends that the killing during the storehouse breaking by one of his codefendants was not a natural and probable consequence of the storehouse breaking. See *Veney v. State,* 251 Md. 159, 246 A. 2d 608.

In the facts here it is important to note that appellant knew that his codefendant had a gun before either party entered the building. While it is possible to imagine hypothetical crimes in which guns are used for purposes other than shooting, specifically shooting at people, it would be to fly in the face of reality to ignore that guns in a criminal situation are usually used to effect the crime desired or to prevent interference. Thus as the Court said in *Romero v. State,* 101 Neb. 650, 164 N. W. 554, 555:

> "In the instant case the [appellant] by his own testimony knew that his companion had a gun. He was bound to know that his companion might use it in resistance of an officer who might attempt to arrest him. The attempt to arrest is an interference with their plans. It is common experience that persons engaged in committing a felony may kill those who interfere. Such appears to be the general, though possibly not the universal, holding of the courts."

Also the Court said in *People v. Durham,* 449 P. 2d 198 (Cal. 1969):

> " '[P]istols are used by burglars, not for breaking into safes, but for preventing interference with the criminal design or arrest by those who may discover its existence.' "

See also *State v. Boone,* 257 P. 739 (Kansas 1927) wherein the Court said:

> "The evidence that the companions of the appellant took guns with them tended to prove that they intended to kill if it became necessary in order to accomplish their design or to effect their escape."

It is apparent that the homicide in the instant case was natural and probable since Jeter had entered a plan to commit a felony, had gone with the other felons to the site of the crime, and knew that one of his codefendants had a gun. It was a natural and probable consequence that the gun was actually used to shoot and kill an interfering party. It would be unreal, if not fantastic, to believe that someone in Jeter's position would believe his codefendant armed with a gun, being inside a warehouse would surrender meekly instead of using the weapon.

The question of what is or is not a natural probable consequence is a question of fact for the trier of fact. See *People v. Durham, supra, People v. Kauffman,* 92 P. 861 (Cal. 1907), *People v. King,* 85 P. 2d 928 (Cal. 1938), and Wharton, *Criminal Law and Procedure,* § 90. In the instant case we cannot say that the trial judge was clearly erroneous in deciding that the homicide stemmed naturally from the use of a gun in the perpetration of the felony.

Jeter next contends that he was under arrest at the actual moment of the fatal shooting of the night watchman, and, therefore, is not legally liable for that murder since he was no longer in a position to be of assistance to the actual perpetrator. In essence, appellant contends that his legal liability for the crimes here should end at the same moment that his practical ability to aid the perpetrator ended.

In considering this contention it should be noticed initially that it is by no means clear that appellant was actually in custody at the moment the murder occurred. The State has vigorously contended that the murder had al-

ready occurred before appellant was arrested by the fact that only one shot was heard after defendant was arrested, that shot being fired by Officer Boring. If there was only one shot heard, the State explains, and that shot was fired by a police officer, then the fatal shot must have been fired before appellant was arrested. Assuming, as did the trial judge, the appellant was in fact in custody and effectively demobilized before the fatal shot was fired, it makes no difference to his legal liability. Appellant would have us take a very restrictive view of the requirement that a second degree principal, being present and having already actually aided and abetted, continue to be in a position to aid and abet during every second of the criminal transaction, and that if a crime occurred during a moment when the second degree principal could not actually aid, then there would be no legal liability. In the posture of this case, there is no requirement that appellant aid and abet in the commission of the homicide itself. It is sufficient that appellant, being present, did aid and abet in the storehouse breaking. Having set the criminal process in motion, appellant may not escape legal liability for acts that occur within that same continuous criminal transaction, especially when, as here, the transaction continues without an intervening hiatus. If the main thrust of the criminal design of appellant and his codefendants were a homicide, then it would be necessary to show that appellant was present in a position to aid and abet in the homicide. However, here, the main thrust of the criminal design was the storehouse breaking in which there is no doubt that appellant was present and aided and abetted. Having aided and abetted in the main thrust of the criminal design, it is not necessary that he aid and abet in the consequential crimes in order to be responsible for them. Further, it would be giving appellant an undue windfall to allow him to escape criminal liability based on such a fortuitous circumstance as the moment of his arrest. It should be noted that the employees stated that appellant appeared to be trying to enter the warehouse only seconds before the

fatal shooting, showing that up to the last few seconds before the homicide, appellant was an active participant in the criminal transaction. This holding would seem to be in accordance with the authorities which hold one who joins in a criminal activity is responsible for all that occurs until he withdraws and communicates his withdrawal to his confederates, and a sudden flight during the crime will not end his responsibility. See *State v. Taylor*, 173 La. 1010, 139 So. 463 and Clark and Marshall, *Law of Crimes*, § 8.11.

Jeter alleges in his reply brief, but the record does not show, that Robinson, the actual killer according to this record, has been acquitted of murder, and claims he, Jeter, should also be acquitted. Although one cannot be convicted as an accessory after the fact until the principal has been convicted, *State v. Magliano*, 7 Md. App. 286, 255 A. 2d 470, the rule does not apply to a principal in the second degree, who is considered the same as a principal in the first degree for all practical purposes. *Agresti v. State*, 2 Md. App. 278, 234 A. 2d 284, *Williams v. State*, 5 Md. App. 450, 247 A. 2d 731, n. 18, 1 Wharton, *Criminal Law and Procedure*, § 115. Unfortunately, at times, an accused is improperly acquitted of a crime; sometimes due to the unavailability of important testimony or technical reasons which do not directly bear upon his actual guilt or innocence. This is no reason to acquit a second person who is also guilty of the crime. Our discussion of the rule as to accessories in *State v. Magliano, supra,* indicates that we are following the rule on accessories only because the law is clearly established, and the legislature has not seen fit to change it, and not because we think it is the better rule.

*Judgment affirmed.*