KENNETH TODD AND JAMES EARL MERRYMAN
v. STATE OF MARYLAND

[No. 914, September Term, 1974.]

*Decided June 4, 1975.*

The cause was argued before Powers, Gilbert and DAVIDSON, JJ.

*Weldon Leroy Maddox* and *Howard Norin, Assigned Public Defenders,* for appellants.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Mark Kolman, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Kenneth Todd and James Earl Merryman, appellants, were each convicted by Judge James A. Perrott, at a non-jury trial in the Criminal Court of Baltimore, of murder in the second degree (Md. Ann. Code art. 27, § 411), and each was sentenced to imprisonment for a period of twenty years. In this Court both Todd and Merryman challenge the sufficiency of the evidence. Todd individually poses three other questions for our review, namely: (a) an amendment of the indictment so as to add thereto the words "kill and" before the word "murder", (b) the failure of the trial court to rule on Todd's motion to suppress an in-court identification, and (c) the failure of the trial court to rule on Todd's motion for a speedy trial.

## THE SUFFICIENCY OF THE EVIDENCE

The evidence presented on behalf of the State demonstrated that Todd and Merryman, in company with Andra Lumpkin and George Benton, became involved in an altercation with the late Pauline Gordon, a sixty-two year

old woman. During the altercation Mrs. Gordon was stabbed to death. Lumpkin, in exchange for the State's promise not to prosecute,[1] turned "State's evidence." Lumpkin related to Judge Perrott that as the four youths passed Mrs. Gordon she, without provocation, slashed Lumpkin upon the arm with a knife. Benton then kicked Mrs. Gordon, knocking her to the street, and then Todd and Benton fell upon her, and Todd repeatedly stabbed her. The stabbing seemingly occurred with a knife that had been in the possession of Mrs. Gordon. Merryman's participation in the offense consisted of an initial kicking and then "standing around."

An eyewitness, a seventeen year old youth, told Judge Perrott that he had observed the entire occurrence from the vantage point of a third story bedroom of the house in which he resided. The youthful witness narrated to the judge that he saw the quartet "messing with the lady." He said that Todd and Merryman kicked Mrs. Gordon. According to the witness, Todd did the actual stabbing of the victim.

Todd, in his testimony, sought to exculpate himself. It is patent that the judge did not believe Todd. On the evidence we are unwilling to state that the judge was clearly erroneous. Md. Rule 1086.

The evidence with respect to Merryman discloses that he "kicked" the victim, and then stood around, apparently watching his cohorts, Todd and Benton, continue the assault upon Mrs. Gordon, until she had been slain. Mere presence at the scene of a crime is insufficient to sustain a guilty finding, *Williams v. State*, 3 Md. App. 58, 237 A. 2d 822 (1968). When, however, as here, the accused's presence at the scene of a crime is coupled with his, in some degree, aiding and abetting by direct assistance or encouragement the commission of the crime, the accused is accountable as a principal in the second degree. As such he is equally as guilty as the principal in the first degree. *Williams v. State*, 5 Md. App. 450, 247 A. 2d 731 (1968); *Butina v. State*, 4 Md. App. 312, 242 A. 2d 819 (1968); *Chaviz v. State*, 3 Md. App.

---

1. *But see* Bowie v. State, 14 Md. App. 567, 287 A. 2d 782 (1972).

179, 238 A. 2d 151 (1968); *Agresti v. State,* 2 Md. App. 278, 234 A. 2d 284 (1967).

Merryman elected not to testify. The undisputed facts before the trial judge clearly demonstrated Merryman's participation in the offense as a result of his having kicked Mrs. Gordon and his continued presence during the crime. Both of those factors enabled, in our view, Judge Perrott to draw a reasonable inference that Merryman was not a mere onlooker, but rather a participant in the commission of the crime. The test for sufficiency of the evidence was succinctly stated in *Coward v. State,* 10 Md. App. 127, 130, 268 A. 2d 508 (1970), where we said:

> "The test of the sufficiency of the evidence in a case tried before the court without a jury is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged."

The testimony of the eyewitness was, in the case before us, in and of itself sufficient, if believed, to sustain the convictions. *Metallo v. State,* 10 Md. App. 76, 267 A. 2d 804 (1970); *Bailey v. State,* 6 Md. App. 496, 252 A. 2d 85 (1969); *Reed v. State,* 1 Md. App. 662, 232 A. 2d 550 (1967). We have no difficulty in concluding that the evidence presented on behalf of the State was more than enough to establish the guilt, beyond a reasonable doubt, of the two appellants.

### THE AMENDMENT OF THE INDICTMENT

When the case was called to trial the State moved to amend the first count of the indictment which had charged in pertinent part that Lumpkin, Todd and Benton [2] "on the first day of August, in the year of our Lord, nineteen hundred and seventy-three, at the city aforesaid feloniously, wilfully and of deliberately premeditated malice aforethought did murder one Pauline Gordon. . . ." The

---

2. Merryman was indicted separately.

amendment inserted between "did" and "murder" the words "kill and". Over objection, Judge Perrott allowed the amendment on the ground that it was one of form and not of substance. We are unable to fathom how the addition of the words "kill and" was anything more than mere surplusage. In any event the addition of the two words "kill and" did not affect the validity of the indictment. We agree with the State that the appellant's contention is frivolous and without merit. *State v. Wheatley*, 192 Md. 44, 63 A. 2d 644 (1949); *Hawthorn v. State*, 56 Md. 530 (1881); *Wilkins v. State*, 16 Md. App. 587, 300 A. 2d 411 (1973), *aff'd*, 270 Md. 62 (1973); *Watkins v. State*, 4 Md. App. 47, 240 A. 2d 787 (1968).

## THE MOTION TO SUPPRESS AN IN-COURT IDENTIFICATION

A motion to suppress the judicial identification was filed on behalf of Todd by his then attorney on October 16, 1973, a period approximately five and one-half months prior to the time of trial. When the case was called before Judge Perrott, the following occurred:

> "(The Court) For the record, the Court at a bench conference — I'm saying this now so the defendants can clearly hear it, although I know counsel have already informed the defendants of the nature of the bench conference — The Court pointed out to counsel there were two pending Motions. One was a Motion for speedy trial and the other was to suppress the evidence. The Court offered to suspend and give counsel an opportunity to proceed with this Motion. However, they have made the suggestion that the proceedings continue, that counsel reserve all of their rights as the case may be, but to argue these Motions at the conclusion of the State's case along with any other Motions that may be argued before the Court. Mr. Pennington, have I fairly stated what we have discussed at the bench?
>
> (Mr. Pennington) [Defense counsel] Correct.

* * *

(The Court) I ask the State.

(Mr. Kolman) [Assistant State's Attorney] Yes.

(The Court) It is understood and agreed by and between the State and Counsel for each of the two defendants, these Motions will be heard during the course of trial and ruled upon, and they are waiving their right to have any form of preliminary hearings on these two Motions.

(Mr. Pennington) Procedural rights.

(The Court) Yes, exactly. The Clerk will now sequester the witnesses."

Later the following is revealed in the record:

"(The Court) Yes. I'll deny your Motion further on Indictment 17303483 on the First and Third Counts. . . . I will grant it on the Second Count for reasons I have already announced. . . .

(Mr. Kolman) Would this be the appropriate time to rule on the other Motions?

(The Court) Yes. I reserve ruling on the Motion for speedy trial. However, I have heard absolutely no evidence there was any identification that was impermissibly tainted.

(Mr. Pennington) We are not pressing that Motion at this time."

Although Todd did offer evidence during the course of the trial to the effect that the eyewitness's view of the crime may not have been as clear as the witness indicated, such testimony strikes at the weight of the witness's version, not its admissibility. We have found nothing in the record that even remotely indicates or suggests that the identification was tainted. The witness stated flatly that he had previously known the four youths who were involved in the slaying, and was readily able to identify each of them. The trial judge stated, ". . . I have heard absolutely no evidence [that] there was any identification that was impermissibly tainted." Todd's then counsel replied, "We are not pressing that

Motion at this time." [3] We think Judge Perrott's remarks to be a forerunner of a ruling, never made, that the identification was not "impermissibly tainted", and counsel's comment to be a withdrawal of the motion to suppress.

## THE MOTION FOR A SPEEDY TRIAL

Todd was apparently arrested the night of the murder, *i.e.*, August 1, 1973, and was released on $10,000.00 bail on August 10, 1973. Indictment was handed down by the Grand Jury of Baltimore City on August 17, 1973. The motion for the speedy trial was filed on October 16, 1973. The motion reads as follows:

### "MOTION FOR SPEEDY TRIAL

Mr. Clerk:

Now comes the defendant, Kenneth Todd . . . and in accordance with his/her constitutional rights respectfully requests a speedy trial in the above captioned indictment(s)." [4]

The record discloses that it was the judge who called counsel's attention to the motion. The judge, however, did not rule on the motion at that time, but instead reserved his ruling. No ruling was ever forthcoming.

We note that the motion filed on behalf of Todd demands a "speedy trial", but it does not seek a dismissal of the indictment for lack of a speedy trial. We think there is a vast difference between the two types of motions. If the trial court had before it a motion to dismiss because of a denial of the right to a speedy trial, and failed to rule upon that motion, prior to the completion of the case, we would have no hesitancy under the authority of *Brice v. State*, 254 Md. 655, 255 A. 2d 28 (1969) and *Saunders v. State*, 8 Md. App.

---

3. The motion was never "pressed".

4. The motion was filed by a different attorney than the one who tried the case for Todd. Actually, the motion appears to be a "form" in which the blanks have been completed. It was filed by an Assistant Public Defender who was subsequently replaced by privately retained counsel.

143, 258 A. 2d 776 (1969) in reversing the judgment, because the ruling on the motion could be dispositive of the case.

We think *Brice* and *Saunders* to be inapposite to the case now before us. We so think because the granting of the motion in *Brice* to dismiss on the ground of double jeopardy could have led to a dismissal of the charges, and in *Saunders*, had the motion for a severance been granted, such severance could have produced a different end result. In the instant case the granting of the motion for a speedy trial would merely have carried the case to trial speedily, a *fait accompli*. Even though Judge Perrott failed to rule upon Todd's motion for a speedy trial, trial was, nevertheless, held within nine months from the date of the arrest and six and one-half months from the date of the filing of the motion. During all but ten days of that period of time Todd was on bail, so that no serious question can arise of his inability to assist in his defense. *United States v. Ewell*, 383 U. S. 116, 86 S. Ct. 773, 15 L.Ed.2d 627 (1966); *State v. Hunter*, 16 Md. App. 306, 295 A. 2d 779 (1972). More important in this case, however, is the fact, as we have previously noted, that the motion filed on behalf of Todd was for the purpose of obtaining a speedy trial. It was *not* a motion to dismiss for lack of a speedy trial. Todd received what he sought, *i.e.*, he asked for and obtained a speedy trial, notwithstanding the court's failure to rule on the motion. Consequently, the trial judge's failure to rule upon the motion is academic. The matter is moot. When Todd asked for and received the speedy trial, there was nothing more for the trial judge to do.

We think Todd now grasps for straws and seeks to convert, belatedly, his motion for a speedy trial into a motion to dismiss for lack of a speedy trial. We shall not allow the conversion.

*Judgments affirmed.*