867 A.2d 334

**Maurice OWENS**

v.

**STATE of Maryland.**

**No. 2145, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Jan. 31, 2005.

Stacy McCormack (Stephen E. Harris, Public Defender, on brief), for appellant.

Devy Patterson Russell (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel HOLLANDER, SALMON, ADKINS, JJ.

ADKINS, J.

As appellant Maurice Owens threatened two would-be heroin buyers at gunpoint, one of Owens' companions opened fire. The question of first impression raised by Owens in this appeal is whether he can be convicted of attempted second degree murder for aiding and abetting in the shooting, even though the person charged as the shooter was previously acquitted of that crime. Following the lessons of *Jeter v. State*, 261 Md. 221, 274 A.2d 337 (1971), *aff'g*, 9 Md.App. 575, 267 A.2d 319 (1970), in which the Court of Appeals held that a defendant may be convicted as a principal in the second degree despite the subsequent acquittal of an alleged principal in the first degree, we shall hold that a prior acquittal of the alleged first degree principal does not bar conviction of the second degree principal.

## FACTS AND LEGAL PROCEEDINGS

On August 5, 2002, Thomas Faulkner and Keith Wheeler drove to the 2500 block of Woodbrook Avenue in Baltimore City. Planning to buy heroin, they left two other companions in Faulkner's parked car. As they walked into the area, about forty people cleared out, leaving only six or seven remaining. Faulkner viewed this as a "red flag" that something was wrong.

The two began to walk back to the car, but a group of "five to seven guys" approached. One of them, later identified as Owens, ordered Faulkner and Wheeler to pull up their shirts. Faulkner did so quickly, but Wheeler reacted more slowly. Owens asked what they were doing there. Faulkner replied that they wanted to "buy dope[.]" Owens responded, "well,

buy it then," and pulled out a gun. At that point, someone stepped out from behind the line of men that had formed behind Owens and began to shoot.

Wheeler was hit in the chest and the leg. Wheeler and Faulkner turned and ran back to their car. Faulkner drove Wheeler to a hospital, where he was treated for his wounds.

Police investigation focused quickly on Maurice Owens and Anthony Coker as suspects. On August 13, 2002, both were picked up for questioning. Although they denied involvement in the crime, both were eventually arrested and charged with attempted first degree murder and attempted second degree murder.

Coker was accused of being the shooter. He went to trial first and was acquitted on all charges.

Owens was accused of being the person who initiated the incident by accosting Faulkner and Wheeler. At Owens' trial, the State relied on the testimony of Faulkner, Wheeler, and their two companions who were in the car during the incident—Clyde Adams and Maria Williams. All four testified similarly that Owens was the man who pulled out a gun and pointed it at Faulkner. Adams and Williams could not hear the assailants and were not able to identify the shooter. But Faulkner and Wheeler identified Owens as the man who commanded them to lift their shirts and Coker as the person who shot Wheeler.

For the defense, Coker testified that he had been tried and acquitted. He claimed that, although he heard the shots fired, he was just in the area that night and was not involved with the shooting in any way. Despite his alleged absence and lack of involvement, he admitted telling the police that Owens had some involvement in the crime.

At the end of the prosecution's case-in-chief, defense counsel moved for a judgment of acquittal as to all charges:

> There has been no evidence whatsoever of any concert of action between the person who is alleged to be the shooter, Mr. Coker, and Mr. Owens, none.

There has been no showing of any premeditation. There has been no showing of any existence of any discussions prior to this event, that he had any knowledge of the shooting. It's two events that are connected in time somewhat and that is it. There is no other connection and there is certainly no premeditation.

The trial court concluded that there was sufficient evidence that Owens aided and abetted the shooting, but granted the motion with respect the attempted first degree murder charge:

I'm going to grant the motion with regard to first degree murder because I think it's stretching it too far—looking at the evidence most favorable to the State, he's out there with ... friends or associates of his. I don't know that he's going to anticipate that the person who is behind him or next to him is going to shoot somebody. I think the premeditation is not there with regard to first degree.

With regard to the second degree, he knows, or by inference could know, that his friend had a gun and he shoots a guy because he's slow. I think that is a stretch, but I think there is enough evidence looking at it in a light most favorable to the State.

The following morning, Owens elected not to testify in his own defense. Defense counsel renewed the motion and the following occurred:

[Defense Counsel]: ... As to the argument on the motion for judgment of acquittal, in those counts where Mr. Owens is being prosecuted as an accessory [for] aiding and abetting. I move to dismiss both because of a lack of participation and because as [to] the principal in the first degree, he's been acquitted. So, if no principal in the first degree has been tried, it wouldn't make a difference. But in this case, the principal in the first degree was tried and was acquitted of the charges. And **if there is no principal in the first degree, how can you have somebody identify aiding and abetting.**

**[The Court]: There is one. That person may not have been apprehended.**

[Defense Counsel]: Anthony Coker was indicted and prosecuted as a principal in the first degree. A jury does not return a verdict on the issues by saying we find him not guilty because he wasn't the person. They merely found him not guilty generally. There is no principal in the first degree in this case like there is no co-conspirator. (Emphasis added.)

The trial court observed that "[t]here is at least a case that talks about the subsequent acquittal of the alleged principal in the ... first degree—as not having any effect on a conviction of an accomplice[,]" but questioned whether there is any Maryland case that "prohibits the conviction of Mr. Owens as an accessory to the fact." The court then denied the defense motion, explaining:

There may have been many reasons why Mr. Coker was acquitted. He may have been the shooter, he may not have been the shooter. **Somebody else may have been the shooter. But there was a shooter. So, the question, as I see it, is**—and the State has the burden of proving guilt beyond a reasonable doubt—**is Mr. Owens an accomplice to that shooter?** (Emphasis added.)

The jury concluded that he was. It found Owens guilty of attempted second degree murder, first degree assault, reckless endangerment, use of a handgun in the commission of a crime of violence, and carrying a handgun. Under the terms of a pre-trial stipulation, the court then found Owens guilty of possessing a regulated firearm after having been convicted of a felony.

Owens challenges his convictions for attempted second degree murder, first degree assault, and handgun crimes, raising three issues for our review:

I. Did the trial court err in submitting the charge of attempted second degree murder to the jury even though the person Owens was alleged to have aided and abetted had already been acquitted of the crime?

II. Was the evidence legally insufficient to sustain Owens' conviction for attempted second degree murder?

III. Did the trial court commit prejudicial error by limiting defense cross-examination of a prosecution witness who saw the shooting?

We answer no to all three questions and affirm the convictions.

## DISCUSSION

### I.

### Effect Of Acquittal Of Alleged Principal In First Degree

#### A.

#### Criminal Responsibility Of Accomplices

■ "Under Maryland law, one may commit an offense as either a principal in the first degree, or a principal in the second degree[.]" *Evans v. State,* 382 Md. 248, 264 n. 11, 855 A.2d 291 (2004). A first degree principal is the actual perpetrator of the crime. *See* Richard P. Gilbert & Charles E. Moylan, Jr., *Maryland Criminal Law: Practice and Procedure* § 21.0 (1983 & Supp.1985); *Md. Pattern Jury Instr.— Crim.* 6:01 cmt (*MPJI–Crim* ). "A second degree principal must be either actually or constructively present at the commission of a criminal offense and aid, counsel, command, or encourage the principal in the first degree in the commission of that offense." *State v. Raines,* 326 Md. 582, 593, 606 A.2d 265, *cert. denied,* 506 U.S. 945, 113 S.Ct. 390, 121 L.Ed.2d 299 (1992). "The activity of a principal in the second degree is generally referred to as aiding and abetting, and the aider or abettor is usually called an accomplice." *MPJI–Crim.* 6:01 cmt. (collecting authorities).

■ There is no practical distinction between principals in the first and second degrees "insofar as indictment, conviction, and punishment is concerned." *Id.;* Gilbert & Moylan, *supra,* § 21.1; *see Cooley v. State,* 157 Md.App. 101, 117, 849 A.2d 1026, *cert. granted,* 383 Md. 211, 857 A.2d 1129 (2004). "An

accomplice ... who knowingly, voluntarily, and with common interest with the principal offender, participates in the commission of a crime .... is a guilty participant, and in the eye of the law is equally culpable with the one who does the act." *Woods v. State,* 315 Md. 591, 615 n. 10, 556 A.2d 236 (1989); *Grandison v. State,* 305 Md. 685, 703–04, 506 A.2d 580 (1986). *See also Odum v. State,* 156 Md.App. 184, 192, 846 A.2d 445 (2004)("A person may be guilty of a felony, as a principal in the second degree, by aiding, counseling, commanding, or encouraging, either actually or constructively, the commission of the felony in the person's presence").

### B.

### Effect Of Prior Acquittal Of Alleged Principal In The First Degree

■ Owens argues that "the trial court erred in submitting the charge of attempted second degree murder to the jury where the appellant was charged only as an aider and abetter and the person he was alleged to have aided and abetted was previously acquitted of the crime." He posits that, "under current Maryland law a prior acquittal of a principal in the first degree will preclude the conviction of a principal in the second degree where the only theory advanced by the [S]tate is one of aiding and abetting."

The State acknowledges that Owens was charged with attempted second degree murder for his role as a second degree principal. It argues that, even though Coker was acquitted of the same charges, there was ample evidence from which the jury could conclude that Owens aided and abetted whichever of his companions was the shooter.

The Court of Appeals addressed the effect of a subsequent acquittal in *Jeter v. State,* 261 Md. 221, 223–24, 274 A.2d 337 (1971). Jeter was convicted of premeditated murder based on his participation in a storehouse breaking during which one of his three accomplices shot and killed a security guard. The Court of Appeals agreed with this Court's conclusion that, even though a co-defendant who was accused of being the

"triggerman and principal in the first degree" had been acquitted of all homicide charges while Jeter's appeal was pending, that post-trial development "had no effect on Jeter's conviction." *See id.* at 223, 274 A.2d 337. We explained why:

> Jeter alleges ... that Robinson, the actual killer according to this record, has been acquitted of murder, and claims he, Jeter, should also be acquitted. Although one cannot be convicted as an accessory after the fact until the principal has been convicted, the rule does not apply to a principal in the second degree, who is considered the same as a principal in the first degree for all practical purposes. Unfortunately, at times, an accused is improperly acquitted of a crime; sometimes due to the unavailability of important testimony or technical reasons which do not directly bear upon his actual guilt or innocence. This is no reason to acquit a second person who is also guilty of the crime.

*Jeter v. State,* 9 Md.App. 575, 582, 267 A.2d 319 (1970) (citations omitted).

■ The Court of Appeals affirmed our decision, stating that this "analysis of the applicable law ... is sound and in accordance with the almost unanimous opinion of the authorities as enunciated by the courts of other jurisdictions and the criminal law treatises." *Jeter,* 261 Md. at 223–24, 274 A.2d 337 (citations omitted). Thus, "the **subsequent** acquittal of a principal in the first degree does not affect the trial or conviction of a principal in the second degree." *Id.* at 223, 274 A.2d 337 (emphasis added).

As both the defense and the State recognize, there is no reported Maryland precedent on the "flip side" question presented by this case—whether the **prior** acquittal of a first degree principal precludes conviction of a second degree principal. In other words, once an alleged first degree principal has been acquitted of the crime, can another person charged as a principal in the second degree be convicted for his role in aiding and abetting the commission of that crime? The clear answer given by other courts and treatise writers is "yes."

At common law, a principal in the second degree could be tried and convicted before the trial and conviction of the principal in the first degree; **he could even be tried and convicted after the trial and acquittal of the principal in the first degree. But, in order to convict the principal in the second degree for aiding and abetting, the commission of the prohibited act by the principal in the first degree had to be proved.**

1 Charles E. Torcia, *Wharton's Criminal Law* § 34 (15th ed. & database updated through Nov. 2004)(footnotes and citations omitted; emphasis added). *See also* Wayne R. LaFave & Walter R. Scott, *Criminal Law* § 65, at 517 (West 1972)("it is now generally accepted that an accomplice may be convicted notwithstanding the fact that the principal in the first degree has been acquitted or has not yet been tried"). Courts and commentators generally have agreed that

the acquittal of the principal presents no impediment to the trial and conviction of a person charged with aiding and abetting the commission of the crime . . . . because one who aids or abets the commission of a crime is guilty as a principal of a substantive, independent offense.

The proof must establish that the offense was committed by some one and that the person charged as an aider and abettor, aided and abetted in its commission. However, it is not necessary to identify the actual perpetrator of the crime. He may be unknown.

*Von Patzoll v. United States,* 163 F.2d 216, 219 (10th Cir.), *cert. denied,* 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386 (1947)(cited with approval in *Jeter,* 261 Md. at 224, 274 A.2d 337).

One of the cases cited by the Court of Appeals in *Jeter* in its "representative list of authorities" directly addresses the "prior acquittal" scenario presented by this case. *See Jeter,* 261 Md. at 224, 274 A.2d 337. We find it instructive.

In *North Carolina v. Whitt,* 113 N.C. 716, 18 S.E. 715, 716 (1893), the Supreme Court of North Carolina held that the prior acquittal of an alleged shooter whom the defendant was

charged with aiding and abetting did not bar the defendant's conviction for second degree murder. In doing so, the court followed English precedent dating back three hundred years.

Wallis' Case, 1 Salk. 334, is an authority exactly in point. He was tried at Old Bailey in 1703. The indictment was against A. for murder, and against Wallis and others as persons present aiding and abetting A. therein. A. was first tried, and acquitted. When Wallis was afterwards put on trial and convicted, Holt, C. J., determined that though the indictment be against the prisoner for aiding and assisting and abetting A., who was acquitted, yet the indictment and trial of that prisoner (Wallis) was well enough, **for all are principals, and it is not material who actually did the murder.**

*Id.* (emphasis added).

The Supreme Court of the United States has applied this rule in federal criminal cases. *See, e.g., Standefer v. United States,* 447 U.S. 10, 16, 100 S.Ct. 1999, 2004, 64 L.Ed.2d 689 (1980)(discussing common law origin of federal rule that "in felony cases a principal in the second degree [can] be convicted notwithstanding the prior acquittal of the first-degree principal"). The *Model Penal Code* also adopts this position. *See Model Penal Code* § 2.06(7)(2001)(accomplice can be convicted "though the person claimed to have committed the offense . . . has been acquitted").

Another case cited by *Wharton's Criminal Law* illustrates why convicting a second degree principal should not depend on whether a first degree principal is ever convicted. In *United States v. Caplan,* 123 F.Supp. 862 (D.Pa.1954), *vacated on other grounds,* 222 F.2d 875 (3d Cir.1955), the defendant was a bank customer who allegedly schemed with a bank officer to defraud the bank of $1.8 million. The bank officer committed suicide before he was charged with any crime. The federal trial court recognized that conviction of the alleged first degree principal was not essential to the aiding and abetting case against the alleged second degree principal:

> **The proof must establish that the offense was committed by someone and that defendant aided and abetted in its commission.** The question whether the proof shows that commission of an offense is one of fact and not of law. It was not necessary to charge [the bank officer] with having committed the offense. **The only necessity of inquiring into his conduct was to ascertain whether or not a crime had been committed.**

*Id.* at 865 (citations omitted and emphasis added).[1]

Although it has not explicitly done so with respect to second degree principals who aid and abet the crime, the General Assembly has taken a consistent approach with respect to accessories before the fact. Md.Code (2001 & Cum.Supp. 2004), section 2–404(c)(2) of the Criminal Procedure Article (CP) provides: "An accessory before the fact may be . . . convicted . . . regardless of whether a principal in the crime has been . . . charged . . . [or] acquitted of the crime[.]" The legislature also has abrogated "the distinction between an accessory before the fact and a principal[.]" CP § 2–404(b)(1). Thus, an accomplice whose criminal culpability is premised on his aiding and abetting conduct before the commission of the crime in question can be convicted notwithstanding the prior acquittal of the person alleged to have committed the crime.

Adopting Owens' contention that the prior acquittal of an alleged first degree principal bars conviction of a second degree principal who aided and abetted during the crime, therefore, would create this anomalous result: an accessory before the fact who did not aid and abet during the crime could be convicted after acquittal of the alleged first degree principal, but a principal in the second degree who did aid and

---

1. On appeal, the Third Circuit held that in these circumstances, even if the bank official need not be charged with any crime, nevertheless, the indictment must adequately identify the crime he is alleged to have committed and also allege sufficient supporting facts. *See U.S. v. Caplan,* 222 F.2d 875, 878 (3d Cir.1955). Because the indictment failed to do so in Caplan's case, the judgment was vacated. *See id.* In this case, there is no dispute that the State adequately alleged and offered evidence that one of Owens' companions shot Wheeler.

abet during the crime could not be convicted after acquittal of the first degree principal. For the reasons articulated in *Jeter* and the authorities reviewed above, we reject such an illogical proposition.

We therefore hold that the acquittal of Coker did not require acquittal of Owens as a matter of law. To be sure, Coker's acquittal was a matter for the jury to consider. But the trial court correctly concluded that the jury nonetheless was free to find that the attempted murder occurred and that Owens aided and abetted the shooter, whether that person was Coker or someone else.

We turn then to Owens' alternative contention that the evidence was insufficient to convict him of attempted second degree murder.

## II.

### Sufficiency Of The Evidence

"In reviewing the sufficiency of the evidence to support a criminal conviction, the standard to be applied is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Raines*, 326 Md. at 588, 606 A.2d 265 (citation omitted). The specific issue raised by Owens is whether the evidence reasonably supported a finding that he had the intent necessary to establish attempted second degree murder.

As a general rule, when two or more persons participate in a criminal offense, each is ordinarily responsible for the acts of the other done in furtherance of the commission of the offense and the escape therefrom.... An accomplice is a person who, as a result of his or her status as a party to an offense, is criminally responsible for a crime committed by another.... **In order to establish complicity for other crimes committed during the course of the criminal episode, the State must prove that the accused participated in the principal offense either as a principal in the first degree (perpetrator), a principal in the second degree (aider and abettor) or as an accessory before the fact (inciter)** and, in addition, the State must establish that

the charged offense was done in furtherance of the commission of the principal offense or the escape therefrom.

*Sheppard v. State,* 312 Md. 118, 121–22, 538 A.2d 773 (1988)(emphasis added and citations omitted). *See also* CP § 4–204(b)(2)("an accessory before the fact may be charged, tried, convicted, and sentenced as a principal"). Thus, when the defendant participates in the main thrust of the criminal design, it is not necessary that he aid and abet in the consequential crimes in order for him to be criminally responsible for them. *See id.* at 123, 538 A.2d 773.

*Sheppard* demonstrates this principle. In that case, Sheppard participated in an armed robbery with three other men. Together, they fled in a single vehicle. When police disabled the car, Sheppard was apprehended as he climbed out of a rear window. His co-felons fled, however. As they tried to escape, they fired three shots at pursuing police officers.

The Court of Appeals held the evidence was sufficient to convict Sheppard of assault with intent to murder the officers, even though he was already in police custody at the time those crimes occurred.

In the case at bar, the principal offense was the armed robbery of the two women at the liquor store. The aggravated assaults against the police officers, perpetrated during the escape from the commission of the robbery, were secondary or incidental offenses. Thus, contrary to Sheppard's contention that his responsibility for the aggravated assaults is dependent upon proof that he aided and abetted the commission of those offenses, Sheppard's complicity rests on the fact that he aided and abetted the armed robbery.

*Id.* at 123, 538 A.2d 773.

This holding was confirmed in *Raines,* 326 Md. at 598, 606 A.2d 265. Distinguishing *Sheppard,* the *Raines* Court held that the evidence in that case was not sufficient to sustain a first degree murder conviction against the driver of a vehicle from which his passenger shot and killed another motorist. *See id.* at 600, 606 A.2d 265. The critical difference between the records in *Sheppard* and *Raines* was that there was little or no evidence in *Raines* that "the victim was shot by [the

perpetrator] in furtherance of the commission of a criminal offense which [the perpetrator and the accomplice] had undertaken." *Id.* at 599, 606 A.2d 265. The Court of Appeals, however, affirmed this Court's holding that the evidence supported a lesser second degree "depraved heart" murder charge. *See id.* at 600, 606 A.2d 265.

In *Todd v. State*, 26 Md.App. 583, 585–86, 338 A.2d 350, *cert. denied*, 276 Md. 752 (1975), we affirmed the second degree murder conviction of a defendant who kicked the victim, then stood by as his companions stabbed her to death. "Both of those factors enabled ... [the court] to draw a reasonable inference that [the defendant] was not a mere onlooker, but rather an participant in the commission of the crime." *Id.* at 586, 338 A.2d 350. Similarly, in *Cooley*, 157 Md.App. at 117, 849 A.2d 1026, we held that "[e]vidence that [the defendant] transported the shooter to the murder scene, and drove the shooter away after the shooting, was sufficient to establish that Cooley participated in the murder."

We reject Owens' efforts to avoid criminal responsibility for the shooting. There was ample evidence that the shots were fired during an assault that Owens and the shooter had jointly undertaken. Moreover, the jury could infer from the circumstances that Owens initiated the criminal episode, by leading the group of five or six men that included the shooter and by threatening Wheeler and Faulkner. Specifically, Owens' order to both men to lift their shirts, and his remark, "well, buy it then" as he drew his gun, might reasonably be understood to have been "counsel, command, or encourage[ment to] the principal in the first degree in the commission of that offense." *Raines*, 326 Md. at 593, 606 A.2d 265. Indeed, within moments, the shooter came from behind the line flanking Owens and opened fire on Wheeler. The evidence was sufficient to convict.

## III.

### Limiting Cross–Examination

■ Clyde Adams testified for the prosecution about what he saw and heard from the parked car. On direct, Adams said

that his only reason for being in the car that afternoon was to get a ride home from Faulkner.

On cross-examination, defense counsel asked Adams about the route taken by Faulkner after they left work that afternoon. After eliciting testimony that Faulkner went to pick up his girlfriend, Maria Williams, then headed to West Baltimore instead of heading east where Wheeler and he both lived, defense counsel attempted to impeach Adams' prior testimony:

[Defense Counsel]: Where were you going at that point?

[Adams]: I thought I was taking Keith [Wheeler] home.

Q: But [Faulkner] was going to West Baltimore and he lived in East Baltimore, correct?

A: Northeast.

Q: Northeast. Did you say, you know, I know it's ... somebody giving you a ride, and you're grateful? Did you say like drop me off first?

[Prosecutor]: Objection.

The Court: Sustained. Come up to the bench.... I don't know where you are going. What are you trying to show?

[Defense Counsel]: I'm trying to show he was traveling with Mr. Faulkner over on West Baltimore. If he was living in East Baltimore, why would he be there?

The Court: So what?

[Defense Counsel]: Cross-examination.

The Court: That doesn't make any difference. He can['t] cross-examine on what kind of shoes he was wearing.

[Defense Counsel]: I was cross-examining him on the route he took that day to show credibility.

The Court: Excuse me, I disagree with that. If you're trying to make a certain point, I can understand that.

[Defense Counsel]: That's my point.... The point is he is not telling the truth.

The Court: What is he not telling the truth about[?]

[Defense Counsel]: I don't know. How would I know if he is telling the truth or not telling the truth? We've got four different stories so far.

The Court: You'll have to be more direct. I will sustain the objection. I'm ruling the route he took is not relevant. . . .

[Defense Counsel]: I want the record to reflect that I make a strong objection to the limitation of cross-examination when I'm using it as an objective standard to test his credibility.

Owens argues that the trial court's ruling violated his Sixth Amendment right "to cross-examine Adams in an effort to establish that [he] had 'made statements that are inconsistent with [his] present testimony,' and 'that the facts [were] not as testified to by the witness.'" He complains that the ruling prejudicially prevented him from showing Adams testified falsely that he was unaware Faulkner was trying to purchase heroin. We do not agree.

## A.

### Standards Governing Restrictions On Defense Cross–Examination

The Confrontation Clause of the Sixth Amendment states that, "[i]n all prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. It is applicable to states through the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). *See also* Md. Const. Decl. of Rights, art. 21 ("In all criminal prosecutions, a man hath a right . . . to be confronted with the witnesses against him").

The primary purpose of the Confrontation Clause is to protect the right of cross-examination. *See Pointer*, 380 U.S. at 404, 85 S.Ct. at 1068. "[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer*, 474 U.S. 15, 22, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985).

 Due to the constitutional importance of cross-examination, courts give defense counsel wide latitude in impeachment questioning of prosecution witnesses. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *Merzbacher v. State,* 346 Md. 391, 413, 697 A.2d 432 (1997); *Ebb v. State,* 341 Md. 578, 590, 671 A.2d 974 (1996). Although trial judges have discretion to reasonably limit cross-examination, they may not impose restrictions until the defendant has been afforded the basic threshold of inquiry allowed by constitutional mandate, *i.e.,* until the defense has been given an opportunity to present the fact finder with enough information to make a discriminating appraisal of the reliability, possible biases, motivations, and credibility of the prosecution's witness. *See Van Arsdall,* 475 U.S. at 679–80, 106 S.Ct. at 1435–36; *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Martin v. State,* 364 Md. 692, 698–99, 775 A.2d 385 (2001); *Smallwood v. State,* 320 Md. 300, 307, 577 A.2d 356 (1990). Accordingly, cross-examination to impeach the credibility of a witness, by showing lack of veracity, bias, interest, or motive to testify favorably for the State, is a matter of constitutional right, and the trial court "retains wide latitude" only "to impose reasonable limits . . . based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435; *see Martin,* 364 Md. at 698–99, 775 A.2d 385.

## B.

### Trial Court's Relevancy Restriction

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401. "Evidence that is not relevant is not admissible." Md. Rule 5–402. Moreover, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed . . . by

considerations of ... waste of time, or needless presentation of cumulative evidence." Md. Rule 5–403.

We review a trial court's determination that evidence is not relevant and therefore inadmissible only for abuse of discretion. *See Tuer v. McDonald*, 112 Md.App. 121, 136, 684 A.2d 478 (1996), *aff'd*, 347 Md. 507, 701 A.2d 1101 (1997). "The appropriate test to determine abuse of discretion in limiting cross-examination is whether, under the particular circumstances of the case, the limitation inhibited the ability of the defendant to receive a fair trial." *Martin*, 364 Md. at 698, 775 A.2d 385.

If the examination was erroneously restricted, we then apply a harmless error standard of review. *See Smallwood*, 320 Md. at 308, 577 A.2d 356; *Churchfield v. State*, 137 Md.App. 668, 688–89, 769 A.2d 313 (2001). The Supreme Court has held that

> [t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

Here, it is at best debatable whether proof that, contrary to his direct testimony, Adams was a willing participant in Faulkner's plan to purchase heroin would have supplied a "fact ... of consequence" to Owens' defense. The State readily acknowledged that both Wheeler and Faulkner planned to buy heroin. The prosecution asked the jury to credit their accounts of the shooting notwithstanding the felonious nature of their errand, and presumably would have taken a similar

**112**

approach toward Adams, with similarly favorable results. Thus, establishing that Adams also planned to buy or use the drug was not likely to have an impact on the jury's evaluation of his eyewitness account. Moreover, in the unlikely event that, as a result of this questioning, defense counsel succeeded in persuading the jury to disregard Adams' testimony, the jury was still free to credit the testimony of Faulkner, Wheeler, and Williams. Since all three identified Owens as the person who initiated the encounter, Adams merely provided a cumulative fourth identification. For that reason, any "nullification" of his testimony would have no favorable impact on the defense. We hold that any error in restricting the State's objection to defense counsel's "route" line of questioning was harmless.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**