# MATTER OF DIANE CONNIE JOHNSON

[No. 678, September Term, 1972.]

*Decided May 31, 1973.*

The cause was argued before MORTON, MOYLAN and GILBERT, JJ.

*Solomon Reddick, Assistant Public Defender,* for appellant.

*Mary Elizabeth Kurz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Lawrence Isbee, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

By the Laws of 1969, Ch. 432, § 2, codified as Md. Ann. Code art. 26, § 70, the General Assembly of Maryland set forth in unambiguous terms its purpose in respect to the law governing juvenile causes and delinquent children. The Legislature stated the purpose of the Act to be:

> "(1) To provide for the care, protection and wholesome mental and physical development of children coming within the provisions of this subtitle;
>
> (2) To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior, and to substitute therefor a program of treatment, training, and rehabilitation consistent with the protection of the public interest;
>
> (3) To place a child in a wholesome family environment whenever possible;

(4) To separate a child from his parents only when necessary for his welfare or in the interest of public safety;

(5) To provide judicial procedures for carrying out the provisions of this subtitle.

This subtitle shall be liberally construed to effectuate these purposes."

This Court, in the case of *In re Hamill*, 10 Md. App. 586, 590-591, 271 A. 2d 762 (1970), said in reference to the legislative purpose:

". . . [I]t is clear that the Legislature intended no departure in philosophy from that underlying previous juvenile court enactments in Maryland, as interpreted by the Court of Appeals, *viz.*, that juvenile proceedings are of a special nature designed to meet the problems peculiar to the adolescent (*In re Fletcher*, 251 Md. 520 [248 A. 2d 364 (1968)]); that the proceedings of a juvenile court are not criminal in nature and its dispositions are not punishment for crime (*In The Matter of Cromwell*, 232 Md. 409 [194 A. 2d 88 (1963)]); that the juvenile law has as its underlying concept the protection of the juvenile, so that judges, in making dispositions in juvenile cases, think not in terms of guilt, but of the child's need for protection or rehabilitation (*In re Johnson*, 254 Md. 517 [255 A. 2d 419 (1969)]); that the juvenile act does not contemplate the punishment of children where they are found to be delinquent, but rather [is] an attempt to correct and rehabilitate them in 'a wholesome family environment whenever possible,' although rehabilitation may have to be sought in some instances in an institution (*Moquin v. State*, 216 Md. 524 [140 A. 2d 914 (1958)])."

*See also In re Arnold*, 12 Md. App. 384, 278 A. 2d 658 (1971).

Cognizant of the fact that not in all situations are juveniles susceptible to the rehabilitative programs available through the Department of Juvenile Services, the Legislature specifically removed from the jurisdiction of the juvenile court certain offenses, Md. Ann. Code art. 26, § 70-2(d) (1) and (3).[1] The General Assembly also provided that motor vehicle violations committed by juveniles over 16 years of age, with the exception of "manslaughter by automobile, possession of a stolen motor vehicle, unauthorized use or occupancy of a motor vehicle, tampering with a motor vehicle," or a violation of operating under the influence of alcohol or drugs, should be tried by the District Court. Violations of the motor vehicle law, Md. Ann. Code Art. 66½, by persons under the age of 16, or violations by persons age 16 or over when charged with the foregoing quoted exceptions, rests in the juvenile tribunal.

The State's Attorney has the right, after a petition charging delinquency has been filed in the Juvenile Court, to seek a waiver of the court's jurisdiction, Md. Ann. Code Art. 26, § 70-16, provided he complies with Maryland Rule 911.

The Legislature has mandated that five factors are to be considered by the juvenile judge in any waiver proceeding. Md. Ann. Code Art. 26, § 70-16(b). Those factors are:

"(1)  Age of child.
(2)  Mental and physical condition of child.
(3)  The child's amenability to treatment in any institution, facility, or programs available to delinquents.

---

1. The code removes from the jurisdiction of the juvenile court those offenses for which the punishment is death or life imprisonment, provided the child against whom the charge is placed is 14 years of age or over, § 70-16(a) and § 70-2(d) (1). The juvenile court is also without jurisdiction over a child of 16 years who is charged with robbery with a deadly weapon, § 70-2(d) (3). Of course, the death penalty is not presently viable in Maryland. *Furman v. Georgia*, 408 U. S. 238, 92 S. Ct. 2726, 38 L.Ed.2d 346 (1972); *Bartholomey v. State*, 267 Md. 175, 297 A. 2d 696 (1972); *McLaughlin v. Warden*, 16 Md. App. 451, 298 A. 2d 201 (1973).

(4) The nature of the offense.

(5) The safety of the public."

Not all of the five factors need be resolved against the juvenile in order for the waiver to be justifiable. *In re Waters,* 13 Md. App. 95, 97, 281 A. 2d 560 (1971); *Hazell v. State,* 12 Md. App. 144, 277 A. 2d 639 (1971).

In *In re Flowers,* 13 Md. App. 414, 283 A. 2d 430 (1971), at 417, it is said:

> ". . . [T]he purpose of a juvenile waiver hearing is to determine whether or not the juvenile is a fit subject for juvenile rehabilitative measures."

We pointed out in *Hazell, supra,* that a waiver hearing is a determination of whether a juvenile will receive non-punitive rehabilitation as a juvenile from the State's social agencies, or whether he, if found guilty, will be sentenced as if the juvenile were an adult. We stated, at 154:

> ". . . [J]uvenile jurisdiction is properly waived where, under Section 70-16 [of Md. Ann. Code Art. 26], the juvenile is found, by an exercise of sound judicial discretion based upon legally sufficient evidence, to be an unfit subject for juvenile rehabilitative measures."

*See also Kemplen v. Maryland,* 428 F. 2d 169 (4th Cir. 1970).

In the instant case, the appellant, Diane Connie Johnson, was charged in a "Petition" filed in the Juvenile Court on August 16, 1972, with being a delinquent child, "For the reason that on May 21, 1972, Hrs. 5:30 p.m. . . . [she] unlawfully in a grossly negligent manner did kill and slay Lawrence Brittingham,[2] [age 2 years]." Miss Johnson was 16 years of age at the time of the occurrence.

---

2. While the charge may be applicable to more than one type of homicide, in the instant case, if charged against an adult, it would have been a violation of Md. Ann. Code Art. 27, § 388 Manslaughter by automobile.

On September 14, 1972, the State's Attorney for Baltimore City sought a waiver of jurisdiction. The waiver hearing was held on November 1, 1972, at which time the appellant was 17 years of age. At the hearing, the judge stated that the "ground rules" were to be "an examination of the five criteria set forth in the statute to determine whether or not to waive jurisdiction." Md. Ann. Code Art. 26, § 70-16, quoted above. The Assistant State's Attorney then told the juvenile court judge:

> ". . . [T]he basis for the State's request for waiver is that this charge is too serious to be tried in juvenile court."

The State then stated to the judge that:

> "[Miss Johnson], who is an unlicensed driver, asked the boy friend, who was twenty-one years old and is a licensed driver, if she could drive the car. He gave her permission. A short while later as she was turning the corner, she made a wide turn . . . and instead of putting her foot on the brake she put her foot on the accelerator and she went up on the sidewalk and struck three children. One of them was pronounced dead upon arrival at the hospital."

After the incident, Miss Johnson was sent home by her boy friend, and he told the police upon their arrival at the scene that he was the driver of the car at the time of the accident. Information supplied to the police by witnesses led the investigating officers to conclude that the "boy friend" had not told them the truth. When confronted with the statements of witnesses, the boy friend recanted and implicated Miss Johnson.

The Assistant State's Attorney concluded his presentation of facts with the remark that, "We also feel . . . that the safety of the public would dictate that this case be tried in criminal court rather than [in] juvenile court."

A "Waiver Summary" dated September 20, 1972, was

prepared by the Department of Juvenile Services and submitted to the judge. The "Summary" stated that Miss Johnson was in the eleventh grade at Dunbar High School and was an above-average student. She was described by her tenth grade counselor as "very responsible and reliable and has presented no conduct problem." According to the "Summary" the appellant has been an active participant in "extra-curricular activities," and in the opinion of the counselor had the "potential to be a productive citizen." Miss Johnson attends church on a regular basis and is a member of her church choir.

The appellant offered the testimony of Rev. Leroy Gill, Sr. who informed the court that Miss Johnson was active in civic affairs, and that from his association with her it was apparent to him that she was "very concerned about what has happened," and that there were times when "she has been crying because of the death of the two year old." Rev. Gill expressed the opinion that if Miss Johnson were tried in the juvenile court "it would be [a] greater help [to her] rather than being tried in a criminal court type environment."

The hearing judge opined:

> "Well, I am going to grant the State's request and waive jurisdiction in this petition. It is a very difficult step for me to take because we have a young lady who has had a very credible record for herself. She has not been in any difficulty and she has done well in school and has been active in school activities, has been active in community activities, but I base my decision on her age, almost seventeen when this occurred, *but essentially on the very grievous nature of the offense;* the fact that there was this very tragic killing, the fact that the respondent used subterfuge, the responsibility for it, all of this is a tragedy of immense proportions as we all recognize. It is essentially because of this that I feel that this is not the appropriate tribunal for this matter." (Emphasis supplied).

712

When asked whether the State had any recommendation to make relative to bail for Miss Johnson, the Assistant State's Attorney, who had professed the belief that waiver should be granted because of the involvement of the "safety to the public," stated: ". . . [T]he State would recommend that [Miss Johnson] be released on her own recognizance. . . ."

On appeal to this Court, Miss Johnson avers that the judge abused his discretion by granting waiver. The State's answer is somewhat unique. They urge upon us that the juvenile court "had before it testimony relating to all of the five factors. . . . While the court made its decision primarily on Appellant's age, the nature of the offense and her subterfuge in attempting to avoid responsibility . . . such was proper. . . . All that is necessary is that the court consider all five factors. That the court so considered is evident from the record." After conceding on oral argument before this Court that this was not "the strongest case" for waiver of jurisdiction, the State suggested that Miss Johnson was not in need of the rehabilitative measures afforded by the Department of Juvenile Services and that because she did not need rehabilitation she should be tried in the Criminal Court.

We think it apparent that the hearing judge was unduly influenced by the "nature of the offense" to the extent that the amenability of the appellant to rehabilitation was cast aside and not considered, or, if considered, was not afforded its proper weight. The mere statement that the five legislative factors were considered by the hearing judge does not divest this Court of its right to determine whether *vel non* those factors were actually considered and properly weighed in relation to each other and relative to the legislative purpose embodied in § 70.

It is specious to argue that because Miss Johnson is not in need of rehabilitative measures that she should be charged as an adult. Such an argument is the inverse of the legislative will, § 70, and injects into waiver hearings the anomalistic proposition that waiver should

be granted because the juvenile is too good for rehabilitation, and, as such, should be subjected to the regular criminal procedures. It creates a penalty for good conduct.

We think it apparent from the "Waiver Summary" and the testimony of Rev. Gill that the juvenile appellant is, if adjudged a delinquent child, an ideal subject for the rehabilitative measures available from the Department of Juvenile Services.

We said in *Arnold, supra,* at 396-397:

> "We are not unmindful that, 'disposition in a juvenile case is committed to the sound discretion of the juvenile judge, to be disturbed on appeal only upon a finding that such discretion has been abused.' *Hamill,* supra."

What we said in *Arnold* concerning discretion in juvenile dispositions is equally applicable to waiver hearings. In this case, as in *Arnold* and *Hamill,* we find an abuse of discretion in the juvenile court judge's failure to consider sufficiently the appellant's "amenability to treatment in any institution, facility, or programs available. . . ."

On the record before us, there exists no justification for a waiver of jurisdiction.

> *Order of waiver of jurisdiction reversed and case remanded for further proceedings in the Juvenile Court.*