IN RE APPEAL NO. 179, SEPTEMBER TERM, 1974
FROM THE CIRCUIT COURT FOR DORCHESTER
COUNTY, SITTING AS A JUVENILE
COURT

[No. 179, September Term, 1974.]

*Decided November 20, 1974.*

The cause was argued before THOMPSON, POWERS and GILBERT, JJ.

*Sidney S. Campen, Jr.*, for appellant.

Submitted on brief by *Francis B. Burch, Attorney General, David B. Allen, Assistant Attorney General,* and *William B. Yates, II, State's Attorney for Dorchester County,* for appellee.

GILBERT, J., delivered the opinion of the Court.

The appellant, age 15, was adjudged to be a juvenile delinquent. The finding resulted from his participation in three housebreakings and malicious destruction of properties which occurred during the afternoon hours. Appellant readily admitted his culpability. He said that the reason he and two other juveniles broke into the three residences was that they were hungry. One hundred twenty-two dollars was stolen from one house, and in the other two homes the destruction committed by the juveniles took the form of slashed portraits, torn pictures, a mutilated diary and splattered eggs in and about the house.[1] Appellant did not explain, nor was he asked, how the mutilation and the hurling of eggs throughout the houses sated his hunger. Approximately one and one-half months following the adjudicatory hearing, Md. Rule 912, a disposition hearing was held, Md. Rule 913. At that time the court possessed a report of a clinical psychologist. Testimony was taken from the school principal in which it was indicated that the appellant, sometime after the adjudicatory hearing, had

---

1. The record reveals that restitution has been made.

been suspended from school because a fire had occurred in his locker. Although the appellant denied that he set fire to his own locker, the principal was of the impression that the juvenile had done so. The principal stated that the young man was a "B - C student who could be A", and that "the youngster has the potential to do even better". The psychologist's report, after indicating most strongly that there was a conflict between the juvenile and his father which emotionally "terrorized" the juvenile, stated:

> "It is this examiner's opinion that this child should not be removed from his parents' home but should remain on probation. Counseling will be made available to the parents if possible through the court to help especially the father to deal more appropriately with his attitude towards the child. The father seems to be more interested and most eager to help his children and that he might have been over zealous in his efforts to make them the kind of men he wants them to be."

The hearing judge stated:

> "We have had an epidemic of housebreakings, and we are not going to countenance it. We are not going to have people's homes broken into, their property vandalized and stolen, and the message should go out loud and clear that we are not going to have it. . . .
>
> I have a job to do. There are a lot of things that I do that are difficult, but I have to do it. I have to do what I think is right and in the long run is going to best protect and help you boys and at the same time protect the community. . . .
>
> I'm very much impressed with your behavior since January 17th when you had a hearing. There was a finding, and you knew that a disposition hearing was coming up and that this case would be disposed of following an investigation. I am not deciding the truth or falsity of any charges for

which you were suspended, that has already been determined by the school authorities, but it is important to me because it is indicative of your attitude. It is indicative of the fact that notwithstanding a finding of delinquency in these serious cases you will not comply with the regulations and will not behave as you know you should behave in society. . . .

\* \* \*

. . . I will sign an order committing these boys [2] to the appropriate institution. . . ."

An appeal was entered on March 4, 1974 to this Court. Three days later appellant applied to us for a stay of the juvenile court's order pending a determination of his appeal. We, pursuant to Md. Ann. Code, Cts. & Jud. Proc. Art. § 12-701b (1974), conducted a hearing on March 12, 1974, and on March 13, issued our Order staying the effect of the commitment by the juvenile court. Following the receipt of our Order, the juvenile court judge directed that the juvenile be released from the custody of the Secretary of Health and Mental Hygiene, and he placed the child under parental control.[3]

The case is now before us on its merits.

---

2. The cases of all three juveniles were heard at the same time by the juvenile court judge. Two of them did not appeal.

3. The order placing the child under parental control provided:

"While on probation the probationer shall refrain from further delinquent behavior; shall avoid persons and places of disreputable or harmful character; shall report as directed and obey the instructions of his Probation Officer; shall not leave the jurisdiction without permission and shall comply with other conditions as specified below or may at any time be imposed by this Court.

1. Attend school every day and every period.
2. Achieve academically to the best of your ability.
3. Not to associate with those who are involved, in any way, with any form of drugs or narcotics.
4. Not to leave school grounds at anytime during school day without specific written permission.
5. To report to the Probation Office every Tuesday after school.
6. Not to leave Dorchester County unless accompanied by and under the supervision of your parents."

Courts Art. § 3-802 provides:

"(a) The purposes of this subtitle are:

(1) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle;

(2) To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior;

(3) To provide for a program of treatment, training, and rehabilitation consistent with the protection of the public interest;

(4) To place a child in a wholesome family environment whenever possible;

(5) To separate a child from his parents only when necessary for his welfare or in the interest of public safety;

(6) To provide judicial procedures for carrying out the provisions of this subtitle.

(b) This subtitle shall be liberally construed to effectuate these purposes."

Although we are cognizant of the general rule that the disposition in a juvenile case rests within the sound discretion of the juvenile judge and will only be disturbed on appeal upon a finding of an abuse of that discretion, *In Re Arnold*, 12 Md. App. 384, 278 A. 2d 658 (1971), *In Re Hamill*, 10 Md. App. 586, 271 A. 2d 762 (1970), we think that the record in this case demonstrates such an abuse because it does not show that the separation of the child from his parents is in "his welfare or in the interest of public safety." We repeat what we said in *Hamill, supra* at 590-591:

". . . [I]t is clear that the Legislature intended no departure in philosophy from that underlying previous juvenile court enactments in Maryland, as interpreted by the Court of Appeals, *viz.*, that juvenile proceedings are of a special nature designed to meet the problems peculiar to the adolescent (*In Re Fletcher*, 251 Md. 520 [248 A. 2d

364 (1968)]); that the proceedings of a juvenile court are not criminal in nature and its dispositions are not punishment for crime (*In the Matter of Cromwell,* 232 Md. 409 [194 A. 2d 88 (1963)]); that the juvenile law has as its underlying concept the protection of the juvenile, so that judges, in making dispositions in juvenile cases, think not in terms of guilt, but of the child's need for protection or rehabilitation (*In Re Johnson,* 254 Md. 517 [255 A. 2d 419 (1969)]); that the juvenile act does not contemplate the punishment of children where they are found to be delinquent, but rather an attempt to correct and rehabilitate them in 'a wholesome family environment whenever possible,' although rehabilitation may have to be sought in some instances in an institution (*Moquin v. State,* 216 Md. 524 [140 A. 2d 914 (1958)])."

*See also Matter of Johnson,* 17 Md. App. 705, 304 A. 2d 859 (1973); *In Re Arnold, supra.*

The record in the instant case does not justify uprooting the child from his parents' home and placing him in a training center or other juvenile institution. We, therefore, vacate the judgment of the juvenile court and remand the matter with instructions that the court conduct a new disposition hearing. At that hearing the court should reconsider its disposition in the light of the legislative purpose, our decisions in *Matter of Davis,* 17 Md. App. 98, 299 A. 2d 856 (1973); *Matter of Roberts,* 13 Md. App. 644, 284 A. 2d 621 (1971); *Matter of Wooten,* 13 Md. App. 521, 284 A. 2d 32 (1971); *In re Arnold, supra; In re Hamill, supra,* as well as the conduct of this youthful offender since his placement on probation following our Order of March 13, 1974.

> *Judgment vacated.*
> *Case remanded without affirmance or reversal for further proceedings not inconsistent with this opinion.*
> *Costs to be paid by the County Commissioners of Dorchester County.*