28 A.3d 706

**Jamal Michael GAINES**

v.

**STATE of Maryland.**

**No. 1332, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 7, 2011.

2

4

Phillip Mancini (Natalia R. Medley, Crowell & Moring LLP, on the brief) Washington, D.C., for appellant.

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: KRAUSER, C.J., EYLER, JAMES R., and MATRICCIANI, JJ.

KRAUSER, C.J.

Seventeen-year-old Jamal Michael Gaines, appellant, and two other males robbed, at gunpoint, a McDonald's restaurant and several of its customers. During the commission of those crimes, an employee of McDonald's was pistol whipped and a customer shot at by the robbers. Fleeing in a stolen minivan, the three men were arrested when their vehicle collided with two other vehicles and then crashed into a tree.

The State's Attorney for Anne Arundel County filed a twenty-three count criminal information charging appellant, as an adult, with numerous violent offenses, including armed robbery, first-degree assault, use of a handgun in the commission of a felony, and attempted murder. Appellant, in response, requested what is known as a "reverse waiver." That is, he asked that his case be transferred to juvenile court. That request was denied.

Thereafter, the circuit court, at the conclusion of a bench trial, convicted appellant of thirteen offenses, including armed robbery, first- and second-degree assault, theft, and use of a handgun in a felony or crime of violence and sentenced him to a total term of forty years' imprisonment, granting him credit for time served and suspending all but thirteen years of that sentence.[1]

Appellant claims that the circuit court both erred and abused its discretion in denying his motion for reverse waiver. We disagree and shall affirm.

---

1. For Count 3, first-degree assault of Teodora Contreras, the court imposed a sentence of twenty years' imprisonment, suspending all but thirteen years of that sentence. A conviction of second-degree assault involving the same victim was merged for sentencing purposes. For Count 6, armed robbery of Rebecca Maxson, the court imposed a suspended sentence of twenty years, to be served consecutively to Count 3. Count 7, robbery of Ms. Maxson, was merged into Count 6. For Count 9, second-degree assault of Ms. Maxson, the court imposed a sentence of ten years' imprisonment, to be served concurrently with the other sentences. Count 11, theft from Ms. Maxson, was merged into Counts 6 and 7. For Count 12, armed robbery of Yewande Akinrodoye, the court imposed a suspended sentence of twenty years, to be served concurrently with all other sentences. Counts 13 (robbery of Ms. Akinrodoye), 15 (second-degree assault of Ms. Akinrodoye), and 17 (theft from Ms. Akinrodoye) were merged into Count 12. For Count 19, use of a handgun in the commission of a felony, the court imposed a sentence of twenty years' imprisonment, suspending all but five (reflecting the mandatory minimum sentence), both portions of that sentence to be served concurrently with all other sentences. For Count 20, use of a handgun in the commission of a crime of violence, the court imposed a sentence identical to that for Count 19. Finally, for Count 23, conspiracy to commit armed robbery, the court imposed a suspended sentence of twenty years, to be served concurrently with all other sentences.

## The Robbery

The court below requested a waiver report from the Maryland Department of Juvenile Services ("DJS"), to assist it in deciding appellant's motion for reverse waiver. That report and the evidence adduced at the reverse waiver hearing alleged that, on October 10, 2008, at about 8:30 a.m., appellant and two others [2] robbed a McDonald's restaurant and several of its customers in Glen Burnie, Maryland. All three assailants wore masks and wielded handguns, although at least one of the weapons may have been an air pistol.

Upon entering the McDonald's, the robbers ordered the customers to the floor. Jumping over the counter, appellant and one of the two other males demanded that the store manager, Rebecca Maxson, take them to the safe. Then, seizing Ms. Maxson's cell phone, appellant struck her in the face with his weapon, knocking her into a wall and onto the floor. One of the robbers took a purse from a customer, Yewande Akinrodoye, and a second robber fired a shot at another customer, Teodora Contreras, as she tried to flee the restaurant. The bullet did not wound Contreras, although it left a bullet-hole in her clothing.

The robbers then fled in a stolen minivan and were apprehended when it struck two other vehicles and ultimately crashed into a tree. Police recovered, from the getaway vehicle, a loaded .22 caliber revolver, with two spent rounds, and an unloaded Smith & Wesson pistol, with its serial number scratched off. They also found an air pistol on the ground, behind the left front tire. Appellant was then only nine months short of his eighteenth birthday.

## The Reverse Waiver Hearing

Prior to trial, appellant filed a motion for "reverse waiver" pursuant to Maryland Code (2001, 2008 Repl.Vol.), § 4–202 of

---

**2.** At appellant's trial, the others were identified as Larry Eldridge and Kevin Carolina. Eldridge also was seventeen years old at the time the crimes took place, whereas Carolina was twenty. Both Eldridge and Carolina pleaded guilty to several charges stemming from the October 10, 2008 armed robbery of the McDonald's.

the Criminal Procedure Article ("CP"), and Maryland Rule 4–252(c). At the hearing on that motion, appellant called two witnesses: Ms. Kenya Johnson, a Case Management Specialist with the DJS, who had prepared the waiver report, recommending against reverse waiver, and his mother, Nicole Allen.

The waiver report listed, under the heading "Legal Incidents," an alleged car jacking and armed robbery involving appellant that took place on April 26, 2007. A subheading entitled "Adjudicated Offense" was blank. During her investigation, Ms. Johnson learned that appellant had been acquitted of those charges. Appellant's counsel questioned Ms. Johnson about an "adjustment" that had been made to the report, reflecting this acquittal. The revised DJS report, which is not in the record,[3] apparently indicated that the charges arising from the April 26, 2007 incident had been dismissed. In any event, under questioning by appellant's counsel, Ms. Johnson conceded that appellant had been acquitted of the earlier charges.

The "Legal Incidents" section of the report further showed that appellant had been previously charged, as a juvenile, with trespass, malicious burning, CDS possession, CDS distribution, second-degree assault, and "Deadly Weapon Misdemeanor." The trespass charge was resolved at intake; the other charges were dismissed. He was, however, adjudicated delinquent for a second-degree assault that occurred on December 11, 2007 and was placed on probation for six months. The conditions of that probation required that he have no contact with the victim and that he re-enroll in school, as by that time, he had been expelled from school for truancy. Under the heading "Youth's Amenability to Treatment[ ]," the report stated that appellant's "probation was successfully terminated in 08/2008."

In preparing the waiver report, Ms. Johnson met with appellant, who then was incarcerated and awaiting trial. She

---

**3.** It is clear from the hearing transcript that the revised DJS report was submitted to the court.

"asked him what occurred on [October 10, 2008.]" When, at that meeting, the question arose whether he had wielded a BB gun during the robbery on that date, Ms. Johnson advised appellant to consult his attorney. On the stand, she initially stated that her report relied only on the police report for information, regarding the robbery, but later conceded that she also considered the conversation she had had with appellant.[4] The DJS report, as noted, recommended against reverse waiver.

Appellant's mother, Nicole Allen, took the stand next. During her examination, she opined that appellant was extremely immature for his age and indicated that he was failing in school. Appellant's school records disclosed that he had been expelled from school, that the highest grade he had completed was the 8th grade, that in standardized testing he performed at or below the 20th percentile, and that he had never achieved a grade higher than C.

At the conclusion of the hearing, the circuit court denied appellant's reverse waiver motion.

### Waiver and Reverse Waiver

Waiver is the transfer of jurisdiction from juvenile court to circuit court.[5] The purposes of juvenile court contrast sharply with those of the circuit court. The focus of adjudication in juvenile court is "to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest." CJ § 3–8A–02(a)(4). Although one of the purposes of sentencing

---

4. Appellant did not testify at the hearing, and thus, apart from Ms. Johnson's testimony, there is no record of what he said to her at the meeting.

5. Throughout this opinion, we use the term "juvenile court" as a shorthand for "the circuit court for a county sitting as the juvenile court." Md.Code (1974, 2006 Repl.Vol.), § 3–8A–01(j) of the Courts & Judicial Proceedings Article ("CJ"). We use the term "circuit court" to denote "a court exercising criminal jurisdiction in a case." Md.Code (2001, 2008 Repl.Vol.), § 4–202(b) of the Criminal Procedure Article ("CP").

in the criminal justice system is rehabilitation, it also has, as purposes, punishment and deterrence, neither of which is a stated purpose of the juvenile act. *See, e.g., State v. Dopkowski,* 325 Md. 671, 679, 602 A.2d 1185 (1992) (listing objectives of sentencing in criminal proceeding as "punishment, deterrence and rehabilitation").

Generally, when a minor is accused of conduct which, if committed by an adult, constitutes a crime, original jurisdiction over the child lies in juvenile court. Md.Code (1974, 2006 Repl.Vol.), § 3–8A–03(a)(1) of the Courts & Judicial Proceedings Article ("CJ"). Under limited circumstances, a juvenile court may, either *sua sponte* or on the State's motion, waive its jurisdiction over a delinquency petition. CJ § 3–8A–06(a); Md. Rule 11–113 a. If a juvenile court waives jurisdiction, "the court shall order the child held for trial under the regular procedures of the court which would have jurisdiction over the offense if committed by an adult," and the delinquency petition would then "be considered a charging document." CJ § 3–8A–06(f).

Before deciding whether to waive jurisdiction, a juvenile court must hold a hearing, *id.* § 3–8A–06(b), during which it is to weigh five statutory criteria "individually and in relation to each other on the record":

(1) Age of the child;

(2) Mental and physical condition of the child;

(3) The child's amenability to treatment in any institution, facility, or program available to delinquents;

(4) The nature of the offense and the child's alleged participation in it; and

(5) The public safety.

*Id.* § 3–8A–06(e).

The juvenile court may not waive jurisdiction "unless it determines, from a preponderance of the evidence presented at the hearing, that the child is an unfit subject for juvenile rehabilitative measures." *Id.* § 3–8A–06(d)(1). The burdens

of production and persuasion fall on the State. *Whaley v. State,* 186 Md.App. 429, 443 n. 10, 974 A.2d 951 (2009).

If, however, the child is at least fourteen years old and is charged with an offense "which, if committed by an adult, would be a crime punishable by death or life imprisonment," the juvenile court lacks original jurisdiction; instead, such an offense, and "all other charges against the child arising out of the same incident," must be filed in the circuit court. CJ § 3–8A–03(d)(1). If the child is at least sixteen years old, and the crimes alleged fall within a somewhat broader category of serious offenses, including attempted second-degree murder, robbery, first-degree assault, and use of a handgun in the commission of a felony or crime of violence, the same jurisdictional rule applies. CJ § 3–8A–03(d)(4).

In all such cases in which original jurisdiction lies in the circuit court, the juvenile may request the circuit court to waive its jurisdiction ("reverse waiver") and send the matter to juvenile court. In such a proceeding, the juvenile bears the burden of persuasion. CP § 4–202; *Whaley,* 186 Md.App. at 444, 974 A.2d 951. Because appellant was accused of crimes that fall within CJ §§ 3–8A–03(d)(1) and (4), and, at the time of the offenses, was older than sixteen, he was charged in the circuit court, precipitating his request for a reverse waiver under CP § 4–202.

Like motions for waiver, motions for reverse waiver require a hearing before any decision to grant or deny the motion is made. CP § 4–202(f);[6] Md. Rule 4–252(g)(2)(B) ("A motion to transfer jurisdiction of an action to the juvenile court shall be determined within 10 days after the hearing on the motion."). And, as in waiver proceedings, a court, considering a

---

6. A predecessor statute, Md.Code, Art. 27, § 594A, was silent as to whether a hearing was required. In *Kennedy v. State,* 21 Md.App. 234, 240, 319 A.2d 850 (1974), this Court held that "the clear intendment of Section 594A is that there be a judicial hearing on the question of waiver *to* the juvenile court." The current statute, CP § 4–202, appears to assume that a hearing will be held, stating that the court "shall make a transfer determination within 10 days after the date of a transfer hearing." *See id.* § (f).

reverse waiver motion, must weigh five factors, which are nearly identical to the five factors to be weighed in the context of a waiver proceeding. They are:

(1) the age of the child;

(2) the mental and physical condition of the child;

(3) the amenability of the child to treatment in an institution, facility, or program available to delinquent children;

(4) the nature of the alleged crime; and

(5) the public safety.

CP § 4–202(d).

The five factors to be weighed in both proceedings differ only in one respect: while the waiver statute requires a juvenile court to weigh not only "the nature of the offense," but also "the child's alleged participation in it," CJ § 3–8A–06(e)(4), the reverse waiver statute requires a circuit court merely to weigh "the nature of the alleged crime," CP § 4–202(d)(4), omitting "the child's alleged participation in it" as a part of that factor.

In addition to this one factoral distinction, waivers and reverse waivers differ in one more way: while the waiver statute carries a presumption "that the child committed the delinquent act alleged," CJ § 3–8A–06(d)(2), the reverse waiver statute is silent as to that point. In *Whaley*, 186 Md.App. at 444–49, 974 A.2d 951, we examined the legislative history surrounding this omission in the reverse waiver statute and determined that, as a result of this legislative omission, in a reverse waiver hearing, it was legal error for a court to presume the child's guilt of the alleged offenses. *Id.* at 449, 974 A.2d 951.

### The Appeal

Appellant contends that the circuit court impermissibly considered non-statutory criteria in denying his motion for reverse waiver. The court, he maintains, "improperly considered [his] alleged participation in the crimes charged and [his] inculpatory custodial statement" to the DJS Case Management Specialist, Kenya Johnson.

Relying on *Whaley, supra,* he argues that the circuit court erroneously conflated the legal standards for waiver and reverse waiver and impermissibly presumed his guilt of the offenses charged in denying his reverse waiver request. He maintains, furthermore, that his statement to Ms. Johnson should have been preceded by *Miranda* warnings, because Ms. Johnson was, in effect, an agent of the State when she spoke with him, and he was, at that time, incarcerated. That the court impermissibly relied on that statement in denying his reverse waiver motion is a conclusion he reaches by extrapolating from the fact that it was incorporated into Ms. Johnson's report, a report that recommended denial of his motion.

Appellant also contends that the circuit court abused its discretion in weighing the statutory factors governing the motion for reverse waiver. Specifically, he claims that the court impermissibly gave undue weight to the "nature of the alleged crime" factor, citing *In re: Johnson,* 17 Md.App. 705, 304 A.2d 859 (1973), a case in which this Court reversed a juvenile court's grant of the State's waiver motion on this ground; that the circuit court relied on "an incomplete and confused recommendation" in the DJS report, which tainted the court's weighing of appellant's mental condition; and that it impermissibly considered appellant's domicile. As to this latter contention, appellant notes that the circuit court, in announcing its ruling on his reverse waiver motion, expressed "disappoint[ment]" because appellant's file included "a boat load of dismissals," and speculated that a possible reason was the "huge volume of cases" from Baltimore City, where appellant lives and where the dismissals occurred.

The State counters that "[n]owhere in its ruling ... did the circuit court indicate that it was assuming [appellant] to be guilty of the alleged charges, [but] [r]ather, under [CP §] 4–202(d)(4), the court looked to the nature of the alleged offenses, taking into account the level of [appellant's] alleged participation in the charges." As for appellant's claim that the circuit court impermissibly relied on his statement to Ms. Johnson, the State responds that "there is no indication that

[the] circuit court relied upon any statements by [appellant], . . . or that the opportunity that Ms. Johnson gave [him] to provide his version of the events resulted in information included in the waiver report."

As for appellant's claim that the court below abused its discretion in weighing the statutory factors, the State counters that "the circuit court identified and addressed seriatim the [§] 4–202(d) evaluation factors," as mandated by the statute. And, as for appellant's claim that the circuit court's mention of his numerous prior contacts with the juvenile system, resulting in dismissals, amounted to an improper "bias against persons domiciled in Baltimore City," the State responds that the court merely "indicated disappointment that there had been no earlier interaction with Gaines on a juvenile level," noting that the court "stated that it was not finding fault based on the 'huge volume of cases' handled in Baltimore [C]ity, where Gaines resided."

We begin our analysis with appellant's contention that the circuit court considered non-statutory criteria in its weighing of the factors. As noted previously, the reverse waiver statute includes, among the factors to be weighed, "the nature of the alleged crime," CP § 4–202(d)(4), whereas the waiver statute includes as a factor "[t]he nature of the offense and the child's alleged participation in it." CJ § 3–8A–06(e)(4).

As to the "nature of the alleged crime" factor, *In re: Waters,* 13 Md.App. 95, 281 A.2d 560 (1971), *disapproved on other grounds by In re: Anderson,* 20 Md.App. 31, 40, 315 A.2d 540 (1974), is instructive. Although *Waters* was a waiver case, we recognized in *Whaley, supra,* 186 Md.App. at 448 & n. 15, 974 A.2d 951, that *Waters* explicates the proper standard to be used in weighing "the nature of the alleged crime" in both waiver and reverse waiver cases. There, this Court explained:

**One of the factors to be considered is the nature of the offense, . . . and we think this may encompass not only the type of crime but the circumstances surrounding its commission.** That a victim was beaten or shot during the

course of a robbery in addition to having his property stolen is certainly of probative value on the question of waiver.

13 Md.App. at 104, 281 A.2d 560 (emphasis added).

■ As we shall explain in greater detail later, the circuit court's remarks in the instant case show that it was making every effort to avoid any consideration of the level of appellant's participation. But, even if the circuit court had weighed the level of appellant's alleged participation, it would not have erred in doing so. It is difficult, if not impossible, to consider "the nature of the alleged crime," which the court must do, without considering the actions taken by the alleged perpetrators to commit that crime. Thus, we do not interpret that factor in the reverse waiver statute as being completely divorced from consideration of the actions taken by the alleged perpetrators.

It would be absurd to conclude that, in considering the nature of the offense, a juvenile court, in a waiver hearing, could consider the accused's level of participation in determining that he should be tried as an adult, but that a circuit court, in a reverse waiver hearing, cannot take into account the accused's level of participation in deciding that he should be transferred to juvenile court. Indeed, if appellant's strained interpretation of the "nature of the alleged crime" factor were to prevail, it would lead to unpalatable results. For example, in a case where a fourteen-year-old child has been induced by those older than he into acting as a lookout in an armed robbery that results in a felony murder, the court would be unable to consider his minor and limited role in the crime in deciding whether to grant a reverse waiver. That is a result that would serve neither the interests of the public, the juvenile, nor our system of justice. We do not believe the General Assembly intended such a rigid, inflexible interpretation of "the nature of the alleged crime" and thus reject appellant's interpretation, since we " 'avoid construing a statute in a way which would lead to absurd results.' " *Nelson v. State,* 187 Md.App. 1, 13, 975 A.2d 298 (2009) (quoting *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195 (1985)).

We next address the "presumption of guilt" issue. In *Whaley, supra,* 186 Md.App. at 444–49, 974 A.2d 951, the case upon which appellant relies for the proposition that the court below improperly presumed his guilt, we analyzed the waiver and reverse waiver statutes and determined that, in a reverse waiver hearing, it was legal error for a court to presume the child's guilt of the alleged offenses. *Id.* at 449, 974 A.2d 951. Because the circuit court, in that case, among other things, presumed the child's guilt in a reverse waiver hearing, we reversed and remanded for a new reverse waiver hearing. *Id.* at 450, 453, 974 A.2d 951.

But, appellant's reliance on *Whaley* is misplaced. There, during a reverse waiver hearing, the circuit court addressed the nature of the juvenile's offense, stating: "So for today's proceeding, I believe that Mr. State's Attorney is right, **I am to assume that the charges as brought against the individual are true** and that the allegations filed form the basis thereof are true, that's my role today." *Id.* at 439, 974 A.2d 951 (emphasis added). Then, explaining its denial of the defendant's reverse waiver motion, the court further remarked that **"the facts that I have to accept** is they apparently armed themselves in anticipation with BB guns, by mutual agreement approached a victim and [ ] when they attempted to rob the victim[,] the robbery failed and [they shot him in the face and head]." *Id.* (emphasis added).

Although, in the instant case, the circuit court did preliminarily state: "I take into account, not just the nature of the offense but the level of this person's participation[,] [m]eaning, Jamal Gaines' participation, I certainly take that into account," it ultimately recounted the facts of the robbery without attributing any of the acts specifically to appellant:

> Now, in balancing the factors, I guess I have to say that I am basically overwhelmed by the brazen and callous nature of the crime. It[']s—not that there is ever a good armed robbery, but this is about as bad as they get. It is a[n] armed robbery at 8:30 broad daylight at a McDonald's. Three young guys come in with guns and masks.

Instead of just getting the money, they hop the counter, they—one of them fires off a weapon, one of them strikes the manager or whoever the person was with knocking that person to the floor. Then there is this car chase out of the movies where without them ramming—and it is a stolen vehicle too, I should point out, ramming into police cars and other cars and then taking off on foot.

It is a very, very serious crime. Also, what weighs heavily on me is the threat to public safety. If someone was willing to do this at 8:30 in the morning in broad daylight and not only risk the lives of people in McDonald's but then risk the lives of the police officers and citizens on the road when they are trying to get away, they are just simply a threat to the community.

The circuit court did not state that it was presuming appellant's guilt in considering the nature of the alleged offense; rather, it objectively recounted the acts of the robbers, without expressing a presumption that appellant committed any particular act. Indeed, it is hard to imagine a description of the nature of the crime which took greater pains to avoid a presumption of appellant's guilt. Hence, we hold that the circuit court did not improperly presume appellant's guilt of the crimes charged.

We turn next to appellant's assertion that the circuit court erred in relying on his conversation with the DJS Case Management Specialist, Ms. Johnson. Even assuming, for the sake of argument, that appellant's conversation with Ms. Johnson was an interrogation, we reject his assertion that his Fifth and Sixth Amendment rights were violated by the circuit court's indirect reliance on his un-*Mirandized* statement to Ms. Johnson. Appellant misapprehends the function and purpose of the reverse waiver hearing. As we noted in *Waters, supra*, 13 Md.App. at 103, 281 A.2d 560, "the sole function of the [waiver] hearing is to resolve the question of waiver vel non." The same is true of a reverse waiver hearing, which, like a waiver hearing, does not render an adjudication but merely determines the forum where that is to be done.[7] Thus,

---

7. In this regard, waiver proceedings are governed by a statute that addresses admissibility of reports such as the DJS report at issue in the

constitutional limitations on admissibility of evidence that govern criminal trials and adjudicatory hearings do not automatically apply to reverse waiver hearings.

 Moreover, although a court may, in its discretion, decline to require strict application of the Maryland Rules of Evidence in a waiver hearing, Md. Rule 5–101(c)(5),[8] and, although the rules are silent as to reverse waiver hearings, because of the similarity in purpose shared by waiver and reverse waiver hearings, that is, both hearings are for the purpose of determining the appropriate adjudicatory forum, we conclude that the same rule applies to a circuit court holding a reverse waiver hearing. In short, the court may, in its discretion, decline to strictly apply the rules of evidence during a reverse waiver hearing, as it may during a waiver hearing.

---

present case. *See* CJ § 3–8A–17(c) ("The report of a study under this section is admissible as evidence at a waiver hearing and at a disposition hearing, but not at an adjudicatory hearing. However, the attorney for each party has the right to inspect the report prior to its presentation to the court, to challenge or impeach its findings and to present appropriate evidence with respect to it."). Although there is no corresponding section in the reverse waiver statute, it appears likely that on constitutional grounds a similar limitation applies. *See, e.g., Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) (applying *Miranda* analysis to determine admissibility of juvenile's custodial statement in subsequent juvenile court proceeding). Indeed, the State expressly noted such a limitation in its argument at the reverse waiver hearing.

8. Md. Rule 5–101, regarding the scope of the Maryland Rules of Evidence, states in relevant part:

(c) **Discretionary application.** In the following proceedings, the court, in the interest of justice, may decline to require strict application of the rules in this Title other than those relating to the competency of witnesses:

※ ※ ※

(5) Waiver hearings under Rule 11–113;

※ ※ ※

(10) Any other proceeding in which, prior to the adoption of the rules in this Title, the court was authorized to decline to apply the common-law rules of evidence.

Applying this rule to the case at bar, the court below was not required, either on constitutional or other grounds, to strictly apply the rules of evidence at the reverse waiver hearing. At the hearing, the court had the discretion to consider all relevant information presented to it, including the entire waiver report. And, as appellant concedes, his remarks to Ms. Johnson were not introduced as evidence at his trial. In any event, the hearing judge's explanation for the denial of appellant's reverse waiver motion does not indicate any reliance on facts outside the police report[9] and the charging documents.

■ Next we consider appellant's claim that the circuit court abused its discretion in weighing the statutory factors. The circuit court addressed all of the relevant factors and carefully considered each one, stating at the outset: "These decisions are certainly not ones that I take lightly when I have a 17 year old, I guess he is probably 17 and 7 months at this point." At the time of the armed robbery, appellant was seventeen years and three months old, a factor that weighed against reverse waiver. Indeed, the court noted that he was "going on 18," the age beyond which appellant would have been categorically ineligible for reverse waiver.[10] *See, e.g., Brown v. State,* 169 Md.App. 442, 450, 901 A.2d 846 (2006) (observing that age seventeen-and-a-half years "was a strong factor against transfer because the defendant was 'so close to being an adult'").

On the other hand, appellant's physical condition did not weigh strongly in either direction; the court stated: "Physical condition, he is not the biggest guy but he is not the smallest guy in the world, either, 5'10", 135[lbs]." Commenting that it

---

**9.** Unlike in *Whaley,* 186 Md.App. at 448 n. 16, 974 A.2d 951, the police report is part of the record in the instant case.

**10.** *See* CJ § 3–8A–01(c), (d) (defining adult as "an individual who is at least 18 years old" and child as "an individual under the age of 18 years"); CP § 4–202(b)(1) (reverse waiver allowed only if "the accused child was at least 14 but not 18 years of age when the alleged crime was committed").

"really [didn't] have much on" appellant's mental condition other than his mother's testimony that she had difficulty explaining things to him, the court noted that appellant struggled in reading, but "did well" in math. As for amenability to treatment, the court was ambivalent, stating that it weighed "sort of" in appellant's favor, because he had done "well the one time he was on probation," although the court was troubled by his expulsion from school and subsequent idleness.

In weighing the nature of the offense and public safety, and, in balancing all the factors, the court declared that it was "overwhelmed by the brazen and callous nature of the crime." As stated earlier, appellant participated in an armed holdup of a McDonald's at 8:30 in the morning. He and two others entered the restaurant wearing masks and brandishing what appeared to be handguns, although one of the weapons was an air pistol. One of the robbers discharged a handgun at one of the customers, nearly wounding her, while appellant pistol whipped the store manager, knocking her into a wall, when she apparently did not open the safe quickly enough. After fleeing the store on foot, the trio endangered police, bystanders, and other motorists by engaging in a car chase that concluded when their stolen getaway vehicle crashed into several cars and, finally, a tree. The court understandably felt that these facts established a substantial threat to public safety.

Claiming that the court gave too much weight to the "nature of the alleged crime" factor, appellant cites *Johnson, supra,* 17 Md.App. 705, 304 A.2d 859. In that case, we reversed a juvenile court's waiver of jurisdiction on the ground that it gave undue weight to the seriousness of the alleged crime. Johnson, a sixteen-year-old who did not have a driver's license, had sought and been given permission by her twenty-one-year-old boyfriend to drive his car. Subsequently, she lost control of the vehicle, jumped a curb, and struck three children, killing one of them, a two-year-old child. Afterward, she and her boyfriend concocted an alibi claiming that he had been driving at the time of the fatal accident. Investigating police officers suspected that the story was false and confronted the

boyfriend with their suspicions and the contrary statements of witnesses, inducing him to recant and confess, thereby implicating Johnson. *Id.* at 709–10, 304 A.2d 859.

Johnson was charged in a delinquency petition with manslaughter by automobile. The State moved for waiver, and the lower court granted the motion. We held that the lower court abused its discretion because it had based its decision " *'essentially on the very grievous nature of the offense,'* " *id.* at 711, 304 A.2d 859, and had afforded little or no weight to the juvenile's amenability to rehabilitation. *Id.* at 712, 304 A.2d 859. We also thought it anomalous that, after the court had waived its juvenile jurisdiction, the State, having just argued, successfully, that the juvenile posed a danger to the public, then recommended to the court that she be released on her own recognizance. *Id.*

The instant case, however, is factually much different from *Johnson.* In *Johnson,* we thought it "apparent," from the waiver report and the testimony of her pastor at the waiver hearing, that the child was "an ideal subject for the rehabilitative measures available from the Department of Juvenile Services," *id.* at 713, 304 A.2d 859, because, among other things, she was an above-average student who was " 'very responsible and reliable,' " was well-behaved, and was actively involved in school extra-curricular activities. *Id.* at 711, 304 A.2d 859. Here, in contrast, appellant has exhibited a pattern of increasingly serious brushes with the law, has performed poorly in school, and has been expelled for truancy.

Moreover, the crime charged in *Johnson,* manslaughter by automobile, albeit a very serious offense, pales in comparison to the crimes charged here, when we consider the conduct of the accused and not just the results of that conduct. Indeed, although the consequences of manslaughter are greater than those of the crimes charged in the instant case, manslaughter may, as in *Johnson,* involve less culpability than the crimes with which appellant was charged, as the mental state required for manslaughter is recklessness or gross negligence,

whereas the crimes alleged in the instant case involve intentional wrongdoing.

Not only is the degree of culpability alleged in the instant case far greater than that alleged in *Johnson,* the threat to public safety posed by appellant exceeds that posed by the juvenile in *Johnson.* The court, in weighing the threat to public safety, here, could properly weigh the possibility that a person who participates in a brazen daytime armed holdup is likely to engage in such activity in the future, if given the opportunity, whereas someone who commits manslaughter by automobile may be deemed less likely to repeat such behavior, at least under the circumstances in *Johnson,* where drugs and alcohol were not factors in what appeared to be a simple, but tragic, accident, resulting from a momentary loss of control over a vehicle.

We discern no abuse of discretion in the circuit court's weighing of the statutory factors, and its ruling on appellant's reverse waiver motion was certainly not "well removed from any center mark imagined by [us]," nor was it "beyond the fringe of what [we] deem[ ] minimally acceptable." *North v. North,* 102 Md.App. 1, 14, 648 A.2d 1025 (1994) (defining abuse of discretion).

Appellant's argument that the circuit court abused its discretion in relying on "an incomplete and confused recommendation" in the DJS report is wholly without merit. His counsel spent much of her time at the reverse waiver hearing attacking Ms. Johnson's report, claiming that her evaluation of his education was based largely on her interview with him, that she did not inquire into whether he was literate, that she "did not even attempt to obtain his medical records to ascertain whether or not he had a history of mental or emotional conditions," and that her testimony demonstrated a lack of understanding of the statutory factors regarding reverse waiver.

The evidence that appellant introduced at the hearing consisted of his school records and his mother's testimony. The court carefully considered that evidence. Moreover, appel-

lant's counsel was given wide latitude in challenging the reliability of the DJS Report. The court repeatedly overruled the State's objections to the scope of appellant's counsel's questioning of Ms. Johnson and permitted an extensive and wide ranging examination of Ms. Johnson by her. Moreover, as the *Whaley* Court observed, "[w]ithout a favorable report from DJS, a reverse waiver request faces almost certain denial." 186 Md.App. at 449, 974 A.2d 951.

 Finally, we find no merit in appellant's contention that the circuit court abused its discretion by considering the fact that his domicile was in Baltimore City. In support of that claim, appellant cites the following portion of the hearing judge's remarks in announcing his ruling:

> **I am always disappointed when I get cases where I see a boat load of dismissals.** Now maybe there wasn't proof in all of them, I don't know. **And this just seems to come from Baltimore City for some reason.** And **I am not faulting anyone there** but they have a **huge volume of cases.** Maybe had someone interacted on a juvenile level with the young man earlier on, maybe he wouldn't find himself here right now.
>
> So, as far as the request for the reverse waiver, I am going to deny that request based on my review of all the factors. Okay, I am sorry.

(Emphasis added.)

The judge merely remarked that he was "disappointed" because appellant's file included "a boat load of dismissals" and speculated that a possible reason was the "huge volume of cases" from Baltimore City,[11] where appellant lives and where the dismissals occurred.[12] The judge was merely expressing

---

11. As the State points out, the Court of Appeals has recognized the "heavy docket" of the Circuit Court for Baltimore City in the specific context of juvenile cases. *Forster v. Hargadon*, 398 Md. 298, 301, 920 A.2d 1049 (2007).

12. The court further remarked, "Now maybe there wasn't proof in all of them, I don't know." The court certainly was allowed to consider such

his frustration over the lost opportunities to intervene earlier in appellant's life, possibly preventing what occurred in the present case: "Maybe had someone interacted on a juvenile level with the young man earlier on, maybe he wouldn't find himself here right now." In expressing his dismay as to what effect an early intervention might have had in changing the course of appellant's life, the hearing judge did not abuse his discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

a factor, although it appears to have given appellant the benefit of the doubt. *Cf. Owens v. State,* 161 Md.App. 91, 101, 867 A.2d 334 (2005) (" 'Unfortunately, at times, an accused is improperly acquitted of a crime.' ") (quoting *Jeter v. State,* 9 Md.App. 575, 582, 267 A.2d 319 (1970), *aff'd,* 261 Md. 221, 274 A.2d 337 (1971)). *See also Henry v. State,* 273 Md. 131, 140–51, 328 A.2d 293 (1974) (sentencing judge may consider defendant's involvement in crimes of which he was acquitted by jury, so long as sentence imposed does not exceed statutory maximum for crimes of which he was convicted).